798 So.2d 1113 (2001)
STATE of Louisiana
v.
Mitchell MOLETTE, Jr.
Nos. 01-194, 01-202.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
Rehearing Denied November 28, 2001.
*1115 Charles F. Wagner, District Attorney, by Thomas C. Walsh, Jr., Assistant District Attorney, Appeal Counsel, Alexandria, LA, Counsel for Appellee: State of Louisiana.
Paula C. Marx, Louisiana Appellate Project, Lafayette, LA, Counsel for Defendant/Appellant: Mitchell Molette, Jr.
Court composed of JIMMIE C. PETERS, GLENN B. GREMILLION and ELIZABETH A. PICKETT, Judges.
PICKETT, Judge.

FACTS
On January 1, 2000, the defendant, Mitchell Molette, Jr., was arrested for possession of a firearm and possession with intent to distribute marijuana. At the time of his arrest, the defendant was at a house located at 71 Prospect Street in the City of Alexandria. The house was owned by Mr. Keith Simmons.
Prior to his arrest, Officers Chad Comeaux, Jeffrey Christy, and Billy Daniels of the Alexandria Police Department were investigating the whereabouts of a runaway teenager at 71 Prospect Street, pursuant to a missing persons complaint. The search was initiated on December 28, 1999, by Ms. Aliza Ryland, a social worker for Rapides Parish. At the time of the search, the runaway and her infant were in the custody of the State of Louisiana and in the care of Ms. Ryland. Ms. Ryland assisted Officer Comeaux in the search for the runaway until they found the runaway's eight-month-old baby. Thereafter, Officer Comeaux continued to search for the runaway for three days without Ms. Ryland.
After being unsuccessful at finding the runaway at several residences, on January 1, 2000, Officer Comeaux arrived at 71 Prospect Street with Officer Daniels and Officer Christy. Upon arrival, they saw a group of people sitting on the porch of the house; among them was Gloria Simmons, who was cutting someone's hair. Officer Comeaux asked Ms. Simmons whether she owned the house. She responded that her uncle, Keith Simmons, owned the house and that she was in charge. Officer Comeaux's testimony was supported by Ms. Ryland's testimony that when she and Officer Comeaux went to 71 Prospect Street to search for the runaway on December 28, 1999, Ms. Simmons told her that her uncle owned the house and that she had permission to "hang out" at the house.
Officer Comeaux asked Ms. Simmons whether the runaway was there. She responded that the runaway had just left, but that he could enter the premises and conduct a search of the house for the runaway. Upon receiving her consent, Officer Comeaux entered the house and saw two men at the end of a hallway leading to a kitchen.
Immediately after the two men saw Officer Comeaux in the hallway, Officer Comeaux observed one of the men drop an object on a table in the kitchen and put his hands in his pockets. Officer Comeaux *1116 ordered him to take his hands out of his pockets. When he refused to comply, Officer Comeaux drew his service revolver and pointed it at him. Officer Christy, having heard Officer Comeaux order the man to take his hands out of his pockets, entered the hallway with his service weapon drawn. At that point, the suspect complied with their orders and took his hands out of his pockets. As Officer Comeaux proceeded down the hall, he saw a second man, the defendant herein, and ordered him to place his hands on the table. After both men placed their hands on the kitchen table, Officer Comeaux and Officer Christy handcuffed them.
When Officer Comeaux entered the kitchen area, he noticed marijuana and small plastic bags on the table. It appeared that the men were filling the bags with the marijuana.
Immediately thereafter, Officer Comeaux and Officer Christy began to search the men for weapons. The search of the defendant produced a handgun. At that time, the defendant was placed under arrest.
At trial, Ms. Simmons testified that her uncle lived in the house located at 71 Prospect Street, but had moved out in November of 1999. She stated that at the time of the search, she was at 71 Prospect Street visiting a friend who lived next door.
On April 20, 2000, the defendant was charged by bill of information with one count of illegal carrying of a weapon while in possession of a controlled dangerous substance, a violation of La.R.S. 14:95(E), and one count of possession with intent to distribute marijuana, a violation of La.R.S. 40:966(A)(1). The defendant's conviction stemming from this bill of information is on appeal under our docket number 01-194.
On May 18, 2000, the defendant filed a written Motion to Suppress in this matter. A hearing on the defendant's Motion to Suppress was held on July 17, 2000. Subsequent to this hearing in a separate bill of information filed on August 8, 2000, the defendant was charged with one count of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. In the bill of information, the state alleges that the defendant committed this offense on July 21, 2000, three months after the defendant was charged with possession of marijuana and possession of a firearm while in possession of marijuana. The defendant's conviction for this offense is on appeal under our docket number 01-202. The defendant did not file a written Motion to Suppress under this docket number.
October 9, 2000, the defendant pled guilty under State v. Crosby, 338 So.2d 584 (La.1976), to one count of possession with intent to distribute marijuana and one count of possession of a firearm by a convicted felon, in exchange for a dismissal of the one count of illegal carrying of a weapon while in possession of a controlled dangerous substance. At the conclusion of both pleas, the defendant was sentenced to ten years at hard labor, with credit for time served for each offense. The sentences were ordered to run concurrently with any other sentences he was serving. On October 9, 2000, the state dismissed the one count of possession of a firearm while in possession of a controlled dangerous substance as per the defendant's plea agreement.
The defendant filed a motion for appeal in each of the lower court docket numbers. Both motions were granted by the trial judge on October 10, 2000. On March 26, 2001, the trial court made a ruling of record reflecting that the defendant's Motion to Suppress evidence was denied.

*1117 DISCUSSION
In his sole assignment of error, the defendant maintains the trial court erred in denying his Motion to Suppress. He argues the search of the house at 71 Prospect Street was illegal because the officers had neither a search warrant nor consent from the owner or a person with authority to give consent to conduct a search of the house. The defendant further argues his detention inside the house was an illegal arrest.
Identical assignments of error have been filed by the defendant under our docket numbers 01-202 and 01-194. The events complained of by the defendant, however, are absolutely unrelated to the arrest and subsequent conviction on review under our docket number 01-202. Under this bill of information the defendant is alleged to have violated La.R.S. 14:95.1, by being a convicted felon in possession of a firearm on July 21, 2000. This offense, having been committed four days after the hearing on the Motion to Suppress filed under docket number 01 194, is obviously a separate and distinct offense and has nothing whatsoever to do with the events of January 1, 2000. No Motion to Suppress was filed in 01-202. As the actions by the police officers which are before this court for review are unrelated to the charge to which the defendant pled guilty in 01-202, the assignment of error has no merit as to that conviction. Our discussion pertaining to the constitutionality of the January 1, 2000 search, therefore, is only as it pertains to the charges set forth in the bill of information on appeal under our docket number 01-194.
The defendant entered a plea of guilty to one count of possession with intent to distribute marijuana, reserving his right to appeal the trial court's ruling on the Motion to Suppress under State v. Crosby, 338 So.2d 584 (La.1976). In Crosby, the Louisiana Supreme Court held that a defendant does not waive his right to have a ruling on a pretrial motion reviewed on appeal if he specifically reserves that right as a part of his plea bargain.
In the present case, the trial court did not rule of record on the defendant's Motion to Suppress until March 26, 2001, following the defendant's guilty plea of October 9, 2000. The language in Crosby does not specifically allow a defendant to reserve his right to appeal a ruling that has not yet been issued. A review of the record, however, reflects the court had apparently reached a determination on this issue and, through error, the ruling was not placed on the record.
It is apparent in reviewing the plea that the defendant, the state, and the court were all of the same belief that the ruling had been made and the Motion to Suppress had been denied by the court. Additionally, the comments by both the court and counsel on March 26, 2001, when the ruling was formally made of record, reflect a ruling was made that was apparently, through error, not made a part of the record prior to the plea. The court, at that time, commented as follows:
BY MR. VANDYKE:
And, 257,194.
BY THE COURT:
All right.
BY MR. VANDYKE:

Mitchell Mollette [sic].
BY THE COURT:
Ms. Clerk, we had a hearing in Mitchell Molette, and I don't knowI remember ruling on it, but I don't know if I ruled on it at the end of the testimony or on the day of the trial date. We heard the testimony Friday and the trial was Monday, but one of those dates I ruled on it and it's not in the minutes. Brewer? Was Mr. Brewer there?

*1118 BY MR. VANDYKE:
He represented Mr. Pennywell.
BY THE COURT:
Yeah, Mr. Brewer remembers. Do you remember me ruling on that?
BY MR. VANDYKE:
You took it under advisement, but I think we [were] up here and I thought you came back in after while, and we were doing something else, and (Interrupted)
BY THE COURT:
Okay. I may have said it off the record to you, and then didn't put it on the record. But regardless, in those docket numbers, Ms. Clerk, whatever good it doeshe's already pled guilty, so he waives all of his pre-trial rights if he enters a plea of guilty. But I am going to order that with Mr. Molettethat the Motion to Suppress previously heard, whatever the date it was, is denied by the Court. If you would, just do that minute entry, because that's on appeal. And then we need to send that to who ever the attorney is that is representing Mr. Molette. It needs to be sent to the Third Circuit. So that needs to be supplemented. If you would, have Patti forward that down to the Third Circuit and send a copy of it to whom ever the attorney is representing the defendant.
Considering the record as a whole, we find the defendant was justified in believing, at the time he pled guilty, that a ruling adverse to him had been made and further find his reservation of rights to appeal the ruling on the Motion to Suppress, which is now of record, was sufficient to allow this court to review the merits of his assignment of error.

CONSENT TO SEARCH
The defendant argues that the search of the house at 71 Prospect Street was illegal because the officers did not obtain consent from the owner or any person with authority to grant permission to enter the house to conduct a search. We find the officers' entry of the house in which the defendant was arrested was legal.
In State v. Edwards, 97-1797 (La.7/2/99); 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999), the supreme court held that the officer's search of a home was not illegal in a case where he was given permission to search the defendant's closet by his girlfriend with whom he shared a bedroom.
In its analysis, the court stated:
Warrantless searches and seizures fail to meet constitutional requisites unless falling within one of the narrow exceptions to the warrant requirement, such as a search conducted pursuant to consent. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Owen, 453 So.2d 1202, 1206 (La.1984); State v. Packard, 389 So.2d 56, 58 (La.1980), cert. denied, Packard v. La., 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981). Consent may be given by one having "common authority" over the premises sought to be searched. Common authority is based on "mutual use of the property by persons generally having joint access or control for most purposes." Matlock, 415 U.S. at 171, 172 n. 7, 94 S.Ct. 988 [39 L.Ed.2d 242]. A warrantless search may be valid even if consent was given by one without authority, if facts available to officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 185-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Stewart, 27,049 (La.App. 2 Cir. 5/10/95), 656 So.2d *1119 677, writ denied, 95-1764, 95-1768 (La.12/8/95), 664 So.2d 420. It is clear that, under the facts, officers reasonably believed the consent to be valid.
Id. at 901.
In the present case, the trial court found that the house located at 71 Prospect Street was owned by Keith Simmons, but was uninhabited at the time of the search. In addition, there was evidence in the record that Ms. Simmons gave Officer Comeaux reason to believe that she had authority to allow him to search the house. At the hearing on the defendant's Motion to Suppress, Officer Comeaux testified that when he approached the porch of the house located at 71 Prospect Street, Ms. Simmons told him that her uncle, Keith Simmons, owned the house and that she was in charge. Officer Comeaux's testimony was supported by Ms. Ryland's testimony that Ms. Simmons told her, a few days before the search in question, that her uncle owned the house and that she had permission to "hang out" at the house.
Ms. Simmons testified that her uncle, Keith Simmons, did not own the house located at 71 Prospect Street. She testified that her uncle was renting the house before he moved from 71 Prospect Street in November, 1999. Ms. Simmons further testified as follows:
Q: And what did you tell the police?
A: When they say ___ when they came there, they said they was looking for Gloria Simmons, I say, "I'm Gloria Simmons." They say, "Well, we're looking for M.W." I say, "Well, she's not here." And they say, you know, "Where is she?" I say, "She's gone to the mall." They say, "How did she leave?" I say, "In a car." They say, "What kind of car?" I say, "A brown four-door Grand Prix", just like that. And they say, "Well, can we search the house?" I say, "It's not my house", just like that. And they walked down the steps. One (1) of the cops stayed on the porch, but the other one (1) was down the steps talking to the other ___ to the guy that (Interrupted).
In his written reasons denying the Motion to Suppress, the trial judge did not specifically state he was making a credibility finding. However, because he denied the Motion to Suppress, it is apparent that he believed Officer Comeaux's testimony that Ms. Simmons told him that she had authority to give him permission to search the house and Ms. Ryland's testimony that Ms. Simmons informed her and Officer Comeaux that her uncle allowed her and her friends to hang out there. There was no evidence in the record to suggest that Officer Comeaux had reason to doubt the information given to him by Ms. Simmons.
Thus, Ms. Simmons' representation to Officer Comeaux that she was in charge of the house located at 71 Prospect Street in her uncle's absence was sufficient for him to reasonably believe that Ms. Simmons had authority to grant permission for the search of the house for the runaway teenager. Accordingly, the officers' entry into the house where the defendant was found in possession of marijuana was justified.

LEGALITY OF ARREST
The defendant's next argument pertains to his detention and placement in handcuffs. He argues that his detention was illegal because, at the time he was handcuffed, the officers did not have probable cause for his arrest.
The original detention of the defendant was an investigatory stop, as opposed to an arrest. La.Code Crim.P. art. 215.1(B) gives authority to a law enforcement officer who has stopped a person for questioning and reasonably suspects that he is in danger, authority to frisk the outer clothing *1120 of such person for a dangerous weapon.
In the present case, Officer Comeaux testified to the following course of events after he entered the house:
I started going toward him, telling him to take his hands out of his pocket. I had to draw my service weapon on him. He still refused to take his hands out of his pocket. And then Officer Christy come [sic] in behind me, drew his weapon, and then started coming down the hall. And then when he saw both of us, he ___ he took his hands out of his pockets and started complying with our orders of putting his hands on the table. As we got on down the hall, we saw another black male and ordered him to do the same thing.
Q: Okay. And once ___ what did you do thereafter? What was the next immediate step you made?
A: We went ahead and, for our officers' safety, put the __ put both of the suspects in handcuffs. And there we could see several bags of marijuana on the kitchen table and several empty plastic bags, which one (1) of the black males was holding in his hand, was bagging. They were bagging and twisting them up. And we went ahead and secured the ___ the ___ them for officers' safety and searched their person for weapons, which we found the ___ the automatic handgun that the black male had.
Officer Comeaux's testimony indicates that when he and Officer Christy ordered the defendant and the other suspect to put their hands on the table, their purpose was to detain the defendant only long enough to conduct a weapons search. Moreover, his uncontroverted testimony that the defendant was handcuffed for the safety of the officers further indicates that his initial intent was to restrain the defendant temporarily. Thus, the evidence in the instant case supports a finding that the officers' detention of the defendant was an investigatory stop, as opposed to an arrest.
La.Code Crim.P. art. 215.1 allows (1) questioning of a person on reasonable suspicion of criminal activity, and (2) a weapon search when there is reasonable suspicion of danger to life and limb. State v. Bolden, 380 So.2d 40 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980).
Considering the actions of the defendant, the officers were justified in their belief that he was engaged in criminal activity. Further, they were justified in their belief they were in a threatening situation. The man with the defendant continually refused to remove his hand from his pockets, even after the officers had drawn their weapons and after repeatedly being told to do so. He had seen the man drop the object on the table. Further, after Officer Comeaux saw him drop the object on the table, the same man began backing up in an attempt to remove himself from the officer's view. Once down the hall the officers could see the defendant also present. Given the totality of the circumstances, the officers had reason to suspect the first suspect was armed. Because the defendant was found with the first suspect under these circumstances, the officers' reasonable suspicion extended to the defendant as well. The suspicious behavior of the defendant and his companion justified the officers' search of the defendant for a weapon and the officers' decision to secure their safety by having them place their hands on the table and handcuffing them.
While detaining and searching the defendant for weapons, the officers observed the marijuana in plain view on the table.
*1121 The prerequisites for a legitimate plain view seizure are: (1) there is a prior justification for police intrusion into a protected area, (2) the evidence is discovered inadvertently, and (3) it is immediately apparent without close inspection that the items are evidence of contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The facts before us fit squarely within the requirements of a "plain view" seizure. We have previously held the officers' intrusion into the house at 71 Prospect Street was justified. The marijuana was lying on the table in the room where the defendant was detained and searched for weapons. A weapon was, in fact, removed from the person of the defendant. Clearly, the defendant's arrest was legal.
We find the trial court's ruling, which denied the defendant's Motion to Suppress, to be correct.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find no errors patent.
AFFIRMED.