GUIDRY, Justice.*
| tIn this criminal prosecution for possession with intent to distribute marijuana, evidence was seized from within one unit of a dual residence during a warrantless search, conducted by police acting on information from a citizen informant asserting she had authority over the premises and stating the persons in the residence were trespassers. The issue is whether the evidence should be suppressed. Following a hearing, the district court denied the defendant’s motion to suppress. The defendant sought review in the court of appeal, which reversed the district court ruling.
For the reasons set forth below, we set aside the ruling of the court of appeal granting the defense motion to suppress, reinstate the district court ruling denying the motion to suppress, and remand the case for further proceedings.
FACTS
At the suppression hearing, Officer Robert Barrere of the New Orleans Police Department testified that on April 9, 2009, he responded to a call from a concerned citizen indicating that there were individuals inside of a neighboring residence armed with weapons and distributing illegal drugs. Officer Barrere arrived at the location 12and met the complainant Patrina Brown. She lived in one side of the double residence located at 719/721 Philip Street. He testified that Ms. Brown reiterated that there were individuals inside of the other unit, which shared a common wall, who were armed with firearms while selling narcotics from the residence, and who were trespassers. Officer Barrere testified that he asked Ms. Brown who owned the residence, and she told him her grandmother owned both units and had given Ms. Brown control over the entire building.
Officer Barrere stated that he then approached the door at 719 Philip Street and knocked. Although he could hear a television playing loudly, no one answered the door. He looked over at Ms. Brown and *1071 she told Officer Barrere that he had her permission to open the door. The door was unlocked and Officer Barrere opened it. The door opened into the living room. On the left side of the room was a sofa and table. The defendant, Bruce Brown, was seated on the sofa with his brother Charles. On the table, directly in front of the defendant, was a bag containing 14 other bags of apparent marijuana, an opened box of Good Sense sandwich bags, and a digital scale, all in plain view. Because Officer Barrere had been told that the defendant was armed, he drew his weapon. He ordered the defendant and his brother out of the residence, and with the assistance of his partner, Lucretia Gat-ner, the defendant was handcuffed and placed under arrest. Once the defendant was secured, Officer Barrere testified he went back to recover the contraband and, scanning the area, he noticed the butt of a firearm protruding from the sofa cushions. He retrieved the firearm, a .40 caliber handgun, removed the magazine and emptied the chamber for safety.
PROCEDURAL HISTORY
The defendant and his brother were charged in a single bill of information with one count of possession with intent to distribute marijuana in violation of Louisiana |P>Revised Statute 40:966(A)(2). Following arraignment and assignment of the case, counsel for the defendant filed a motion to suppress.[1]
At the hearing, the defendant argued the seizure was illegal because the officer went into the residence without a warrant, in the absence of exigent circumstances or the observation of criminal activity, and without proper consent. He relied upon Ms. Brown’s statements to the effect that she lived in the adjoining unit but did not own the building. She did not exhibit any evidence of authority or control over 719 Philip Street. According to the defendant, reliance by the officer on Ms. Brown’s assertion that she had been given control of both sides of the premises by her grandmother, without any proof, was not reasonable. The defendant also argues it was not reasonable for the officer, without making further inquiry, to accept Ms. Brown’s assertion that the people in the other side of the double did not belong there.
The State countered that Ms. Brown informed the officers that her grandmother owned the property and that she had been given control over the entire premises. She also informed Officer Barrere that there were armed subjects inside the adjoining unit who were selling drugs and they were not supposed to be there. Consequently, according to the State, before opening the door to 719 Philip Street, Officer Barrere, based upon information he had received from an apparently reliable citizen informant, reasonably believed that Ms. Brown had control over the premises and that the persons inside were trespassers in the commission of a crime.
After taking the matter under advisement, the trial court denied the motion to suppress. In a Per Curiam, the trial judge concluded the officer was provided with | information from Ms. Brown about a crime in progress that he reasonably could have relied on. Further, Officer Barrere knocked on the door to verify Ms. Brown’s *1072 information and only opened the door upon hearing a television set playing, with no response from the persons inside, and after receiving permission to open it from Ms. Barrere, who claimed to have control over the premises.
The court of appeal majority reversed, finding that it was unreasonable for Officer Barrere to believe and act on Ms. Brown’s unsubstantiated assertions. The dissent noted that Officer Barrere was told the individuals occupying 719 Philip Street were armed and in possession of drugs and that they “were not supposed to be there.” As trespassers, the dissent reasoned they would have no Fourth Amendment rights or expectation of privacy. Accordingly, the dissent concluded, Officer Barrere’s entry into the premises to pursue individuals in the commission of a crime with no Fourth Amendment privacy rights was reasonable.
This Court granted the State’s application for certiorari to review the correctness of the court of appeal action reversing the trial court denial of the defense motion to suppress. State v. Brown, 09-2456 (La.12/18/09), 23 So.3d 950.
LAW
Longstanding Fourth Amendment jurisprudence precludes a landlord from consenting to the search of his tenant’s residence unless he also lives in the premises or the tenant has vacated the residence. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). When a defendant challenges a warrantless search conducted on the basis of third-party consent, the validity of the consent is tested against the rule of United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), in which the Court explained that “the consent of one who possesses common authority over the premises or effects is valid as against the absent, | Bnonconsenting person with whom that authority is shared.” Commenting on Matlock, the Supreme Court stated in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006):
It is ... easy to imagine different facts on which, if known, no common authority could sensibly be suspected. A person on the scene who identifies himself, say, as a landlord or a hotel manager calls up no customary understanding of authority to admit guests without the consent of the current occupant. ... A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room. In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises.
Randolph, 547 U.S. at 111, 126 S.Ct. at 1521.
However, in Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), the Court held that individuals who exploit a private premises solely for the commercial purpose of packaging drugs for sale have no reasonable expectation of privacy even if they have the consent of the tenant to use the premises.
Louisiana accords greater protection of privacy rights than does the Fourth Amendment. Louisiana Constitution Article I, Section 5 expressly provides that anyone “adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its *1073 illegality in the appropriate court.” Under this expanded standing provision, “a defendant adversely affected by the search of a home of another has standing ... to assert a homeowner’s loss of privacy rights.” State v. Stephens, 40,343, p. 7 (La.App.2d Cir.12/14/05), 917 So.2d 667, 673-74 (collecting cases). Thus, “[tjhere is no equivalent under Louisiana constitutional law to the federal rule that one may not raise the violation of a third person’s constitutional rights.” State v. Owen, 453 So.2d 1202, 1205 (La.1984). However, | r,Article I, Section 5 presupposes that a person who violates the privacy rights of another by trespassing in the home may not assert those privacy rights as a basis for suppressing evidence recovered by the police in an effort to remove him from the residence (thereby restoring the owner’s privacy interest) without a warrant or the owner’s explicit consent. See State v. Walker, 06-1045, p. 8 (La. 4/11/07), 953 So.2d 786, 791 (“Officer Schnapp’s intrusion on the owner’s privacy interest by entering her residence on the heels of an intruder and removing him without her express consent scarcely added to the initial disruption caused by the defendant’s unauthorized entry into the home after he ignored the officer’s attempt to stop him outside the premises. Under these circumstances, permitting the defendant to assert a third party’s privacy interests he had violated by his own actions would serve no legitimate purpose.”) (citation omitted).
The validity of a third-party’s consent is tested according to an objective evaluation of whether “the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.” Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) (internal quotation marks and citation omitted). There is a presumption of inherent credibility attaching to citizen informants. State v. Kyles, 513 So.2d 265, 271 (La.1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988); State v. Morris, 444 So.2d 1200, 1203 (La.1984).
While anyone who gives information to police may be called an “informant,” a distinction may be drawn between an anonymous tipster and a citizen who witnesses or is the victim of criminal conduct and reports to police as a matter of civic duty. 1 Warren R. LaFave, Search and Seizure, A Treatise of the Fourth Amendment, § 3.3 p. 499-500 (1978). When the informant is an anonymous person, it is critical |7that there be some specific showing that he is a credible person and that his information is reliable. In contrast, citizen informant reports based on firsthand knowledge carry a high indicia of credibility. State v. Morris, 444 So.2d 1200,1203 (La.1984); State v. Lehnen, 403 So.2d 683, 685 (La.1981); U.S. v. Darensbourg, 520 F.2d 985 (5th Cir.1975). The citizen informer is a presumptively inherently credible source. State v. Mosley, 412 So.2d 527, 530 (La.1982).
DISCUSSION
For purposes of applying the Rodriguez test for apparent third-party authority to consent, we need not dwell on whether a reasonable police officer in Barrere’s position could have believed that Patrina Brown, who stated she lived in 721 Philip Street, had common authority over 719 Philip Street sufficient to consent to his entry even if he believed that her grandmother had ostensibly given her that authority. Chapman instructs that Ms. Brown’s grandmother herself could not have given consent to enter the premises without the tenant’s permission. But this presupposes that the defendant and his brother were lawful tenants at 719 Philip *1074 Street, or under Louisiana law, invited guests.
Here, Officer B arrere had presumptively reliable information supplied by citizen informant Patrina Brown that the individuals on the other side of the double were not supposed to be there (from which he could assume they were not tenants or invited guests) and that they were selling drugs while in possession of firearms. Ms. Brown called in the complaint and met Officer Barreré at the premises. Ms. Brown never attempted to leave the scene. This added to her reliability. Furthermore, Ms. Brown was not a mere bystander; she told police she had control over the house and the police had no reason to disbelieve her. No evidence was presented at the hearing on the motion to suppress relative to the presence of circumstances which would | srebut the presumption that the citizen informant was truthful. To the contrary, Officer Barreré approached the residence, confirming Ms. Brown’s information by knocking on the door and receiving no answer, despite the fact that he could hear a television set playing. Armed with the apparently credible information that there were persons in the unit in possession of drugs and firearms who did not belong there and thus had no reasonable expectation of privacy in the residence, Officer Barreré acted reasonably in taking the least intrusive means of responding to the information presented by opening the unlocked door to the premises. Upon seeing the drugs in plain view, he then had probable cause and exigent circumstances existed.
CONCLUSION AND DECREE
We find no constitutional grounds for suppressing the evidence observed in plain view and seized. For the reasons stated herein, we set aside the ruling of the court of appeal, reinstate the district court ruling denying the defendant’s motion to suppress, and remand the case to the district court for further proceedings.
COURT OF APPEAL RULING SET ASIDE; DISTRICT COURT RULING REINSTATED; CASE REMANDED TO THE DISTRICT COURT.
JOHNSON, J., dissents and assigns reasons.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. The record indicates an omnibus motion to suppress was filed by the defendant’s counsel, but both the defendant and his brother appeared at the motion hearing with separate counsel. The notice of intent and the writ application in the court of appeal were filed by the defendant’s counsel. Furthermore, reference is made in the defense writ application, the state’s opposition and the court of appeal decision to the fact that relief was being sought only as to defendant Bruce Brown.