DAVID S. GORBATY, Judge.
lain this pretrial defense writ application, the defendant-relator seeks supervisory review of the trial court’s denial of his motion to suppress evidence. Because we find that the trial court’s ruling is erroneous, we grant the writ and suppress the physical evidence and defendant’s confession.
PROCEDURAL HISTORY OF THE CASE
The State filed a bill of information on June 4, 2010 charging the defendant with one count of possession of cocaine with the intent to distribute. The court denied the defendant’s motions to suppress the physical evidence and his statement. He objected and gave notice of intent to file a writ.
STATEMENT OF THE FACTS
The only witness at the motion hearings was Detective Harry Stovall. Det. Stovall testified that he was working with the narcotics unit on May 25, 2010. On that date, he met with a reliable confidential informant who stated that he knew of |sa *100 person named Ronald who was selling crack cocaine from his room, number 305, at the Gladstone Hotel. The informant explained that prospective buyers would approach the hotel and throw rocks at the window of the defendant’s room. The defendant would then go outside and conduct the narcotics transaction. The confidential informant provided Det. Stovall with a description of Ronald.
Based on this information, Det. Stovall established a surveillance of the Gladstone Hotel. He watched as a black male arrived, picked up a few rocks, and then threw them at a window. The detective saw the defendant come outside and talk with the male who had tossed the rocks at the window. Det. Stovall watched the black male hand the defendant currency; the defendant spit an object out of his mouth into his hand and gave it to the black male. The two men then parted. The defendant went back inside the hotel. The black male left the scene. Det. Sto-vall related the pertinent information regarding the suspected buyer to the backup officers; however, they were unsuccessful in their attempts to locate and stop the suspected buyer.
As Det. Stovall continued his surveillance, he saw the defendant leave the hotel, get on a bicycle, ride to the intersection of Danneel Street and Louisiana Avenue, and enter a store. While Det. Stovall maintained his watch on the store, he advised the back-up officers of the situation and that, when the defendant left the store, he should be stopped. The officers stopped the defendant as Det. Stovall planned. After he was detained, Det. Stovall advised the defendant of his rights and the nature of the investigation; the defendant was then transported back to the Gladstone Hotel. Det. Stovall asked the defendant in which room he resided, and the defendant responded that he resided at 1901 Delachaise, Room 805.
Upon arrival at the Gladstone Hotel at 1901 Delachaise, Det. Stovall went to the office where he encountered Belinda Jones, who identified herself as the owner of the hotel and as the defendant’s mother. Ms. Jones was advised of the nature of l4the investigation and was asked to confirm that the defendant resided in Room 305, which she did. Det. Stovall then asked Ms. Jones to assist or guide the police officers to the defendant’s room. At some point during this interaction with Ms. Jones, Det. Stovall learned that the defendant’s girlfriend, Quintella Rison, was in Room 305. Also at some point, Det. Sto-vall asked for and received written consent from Ms. Jones to search the defendant’s room.
After receiving consent from Ms. Jones, the defendant’s room was searched. In the freezer section of the refrigerator the officers found twenty-six pieces of crack cocaine. In the bottom drawer of a dresser they found various items of paraphernalia (plastic bags consistent with those used to wrap the cocaine, a razor with residue, and a grinder). On the top of the dresser they found and seized documents bearing the defendant’s name.
After the items were seized, Sergeant Palumbo went outside to where the defendant was being detained. He advised the defendant of what was seized and asked the defendant to whom the contraband belonged; the defendant replied, “Me.” The defendant executed a written waiver of rights form. He further stated that, “They didn’t have a slightest idea about it.” According to Det. Stovall, after the defendant admitted that the contraband was his, he was “placed under arrest at that point.”
At the July 16th continuation of the motion hearing, Det. Stovall testified on *101 cross-examination that no contraband or evidence was seized from the defendant’s person when he was detained, placed in the police vehicle, and transported back to the hotel. The detective conceded that neither the. defendant nor his girlfriend, Quintella Rison, consented to a search of the defendant’s residence, Room 305, nor was a search warrant obtained. Det. Sto-vall also testified that there were no exigent circumstances involved in the decision to search the defendant’s room without a warrant.
1 -Det. Stovall testified further that neither Ms. Jones nor Ms. Rison was detained during the incident. Instead, according to the detective, they were free to leave. Det. Stovall stated that the defendant was in the police car while the detective talked with Ms. Jones and also when he spoke with Ms. Rison.
Other testimony elicited by defense counsel during her cross-examination of Det. Stovall was when and how many times the defendant was advised of his rights before admitting that the evidence found in his residence belonged to him. Det. Stovall stated that the defendant was given his rights when he was initially detained and again after he admitted the drugs were his, when Det. Stovall gave him the written waiver of rights form to sign. Det. Stovall testified that the audio recorder in the police unit did not record the defendant’s statements.
During redirect, the prosecutor questioned Det. Stovall again about when the defendant was provided with his rights.
No defense witnesses were presented.
DISCUSSION
Trial Court Arguments and Ruling
Following Det. Stovall’s testimony, defense counsel made multiple arguments to the trial court. Of relevance here is the argument regarding the warrantless search of the defendant’s room. Defense counsel argued that the hotel owner had no authority to allow the police to search the defendant’s living quarters. She noted that the items seized were not out for view by a maintenance or cleaning person, but instead were in a dresser drawer and the freezer; thus the defendant had clearly manifested an expectation of privacy in the hotel room in which he was residing.
The trial court made several comments during counsel’s argument which indicated that the court assumed that the building was not a true hotel, but rather was some kind of a boarding house or family home. The court took the position | fithat Belinda Jones, as the defendant’s mother and the property owner, had the authority to allow the police to search her child’s room located in her home. Defense counsel argued that the court was not properly describing the property, which was more akin to an apartment building, the court stated, “But this isn’t an apartment building with a separate door and a separate key. Am I wrong on that, State?” The prosecutor responded, “It’s a hotel.” In accordance with this comment, when making the State’s argument, the prosecutor described the events surrounding the search as follows:
He [Det. Stovall] goes back, speaks to the hotel owner. The hotel owner grants consent to search via New Orleans Police Department consent to search form. Detective Stovall and other detectives conduct a search of the residence, of the hotel room. They find in there twenty-six pieces of crack.
[Emphasis added.] The excerpt above demonstrates clearly that the State agreed with the defense that the property known *102 as the Gladstone Hotel is an actual hotel.[1] Nevertheless, when the court denied the motion to suppress, the court stated:
The Court finds that based upon what it’s heard today that everyone may be calling it a hotel, but it’s just, again, if the owner of that hotel/room gives consent to search, this is certainly a mother/son relationship on this — there’s been no showing that the defendant pays for his room or has a lease agreement for the room. And, based upon what I’ve heard, the mother had full consent and full knowledge and ability to give that consent.
The defendant is now before this Court arguing strenuously that the trial court erred as the jurisprudence clearly prohibits a hotel owner or employee from giving the police consent to search a room in which the hotel guest has manifested an expectation of privacy, citing Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).
17Law and Analysis
In State v. Hopkins, 04-1268, pp. 10-11 (LaApp. 4 Cir. 12/8/04), 891 So.2d 707, 714, this Court set forth the standard for determining whether evidence was properly seized pursuant to the consent exception to the warrant requirement:
The State has the burden of proving valid consent. State v. Green, 376 So.2d 1249 (La.1979). The voluntariness of the consent must be determined based on the overall facts and circumstances of the case. State v. Edwards, 434 So.2d 395 (La.1983). A trial judge’s factual determination on this issue is entitled to great weight on appellate review. Franklin, 95-1876 (La.1/14/97) at p. 5, 686 So.2d [38] at 41; See also State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. O’Shea, 97-0400 (La.App. 4 Cir. 5/21/97), 696 So.2d 115.
Here, the defense does not contend that Ms. Jones did not voluntarily consent to the search of Room 305. The real issue is whether she had the authority or apparent authority to consent to the search merely because she was the owner of the hotel and the individual hotel room in which her adult son resided.
The Louisiana Supreme Court addressed the issue of the authority to consent to a search in State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893. The defendant shared a bedroom with his girlfriend in the girlfriend’s mother’s house. Officers obtained consent from both the mother and the girlfriend to search the bedroom, where they found evidence of a crime. In addressing whether the mother and girlfriend could consent to the search of the bedroom the defendant shared with the girlfriend, the Court stated:
Warrantless searches and seizures fail to meet constitutional requisites unless falling within one of the narrow exceptions to the warrant requirement, such as a search conducted pursuant to consent. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Owen, 453 So.2d 1202, 1206 (La.1984); State v. Packard, 389 So.2d 56, 58 (La.1980), cert. denied, Packard v. La., 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981). Consent may be given by one having “common authority” over the premises sought to be searched. Common authority is based on “mutual use of the property by persons generally having joint access or control for most purposes.” Matlock, 415 U.S. at 171, 172 n. 7, 94 S.Ct. 988, 39 *103 L.Ed.2d 242. A warrantless search may be valid even if consent was given by one 1 Rwithout authority, if facts available to officers at the time of entry justified the officers’ reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 185-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Stewart, 27,049 (La.App. 2 Cir. 5/10/95), 656 So.2d 677, writ denied, 95-1764, 95-1768 (La.12/8/95), 664 So.2d 420. It is clear that, under the facts, officers reasonably believed the consent to be valid.
Nevertheless, defendant argues that consent was invalid because defendant had a reasonable expectation of privacy in his own bedroom. However, the facts do not support a position that defendant had a reasonable expectation of privacy because there was no area over which he had exclusive use. State v. Cover, 450 So.2d 741, 746 (La.App. 5 Cir.), writ denied, 456 So.2d 166 (La.1984); See also State v. Abram, 353 So.2d 1019 (La.1977), cert. denied, 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663 (1979). Therefore, defendant failed to rebut the valid consent to the search given by one whom the detectives reasonably believed had authority to permit the search. See State v. Owen, 453 So.2d 1202 (La.1984) (where trailer owner’s consent to search of premises, including areas used by guest, resulted in seizure of admissible evidence against the guest); State v. Washington, 407 So.2d 1138 (La.1981).
Edwards, 97-1797 at pp. 11-12, 750 So.2d at 901. The Court found that the girlfriend and her mother, the owner of the house, had the authority to consent to the search of the bedroom.
The trial court in the instant ease appears to have adopted the rationale of the Edwards case without making a distinction between a bedroom in a single-family residence and a hotel room in a hotel which happened to be owned by the defendant’s mother. Relator argues that the court was clearly in error in not applying the jurisprudence applicable to hotels, especially as the State had the burden of proving that Ms. Jones had authority or apparent authority.
The case relied upon by the relator is Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). In that case the police linked the defendant to an armed robbery when they found his checkbook in the parking lot adjacent to the store where the robbery occurred. The police obtained a photograph of the defendant, which was identified by the two eyewitnesses to the robbery as that of the perpetrator. The officers identified the hotel where the defendant was staying from checks which he 18had written to the hotel. When they arrived at the hotel, without either a search warrant or an arrest warrant, they spoke with the hotel night clerk and confirmed that the defendant was living at the hotel. The clerk also gave the officers the room number and advised them that the defendant was not in at the moment. The clerk knew this because the hotel had a practice of having a guest leave the room key in the appropriate mail box at the front desk whenever the guest left the premises. The police officers then asked the clerk for permission to enter the defendant’s hotel room, explaining that they intended to arrest the defendant and wished to look for a weapon. The clerk accompanied the officers to the defendant’s room and opened the door with the room key. The police then entered and conducted a search, which resulted in the seizure of items of clothing and a pistol. The defendant was subsequently arrested.
*104 After the defendant was convicted, and the state courts denied relief, the constitutionality of the search was brought to the United States Supreme Court for consideration. The court first stated that the search clearly was not incident to the defendant’s arrest, which the district court of appeal had concluded. The State subsequently dropped that argument and instead argued to the Supreme Court that “the search of the hotel room, although conducted without the petitioner’s consent, was lawful because it was conducted with the consent of the hotel clerk.” Stoner, 376 U.S. at 487-88, 84 S.Ct. at 892. The Court found “this argument unpersuasive.” Id. The Court expounded on its conclusion:
It is important to bear in mind that it was the petitioner’s constitutional right which was at stake here, and not the night clerk’s nor the hotel’s. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner’s room.
|inAt least twice this Court has explicitly refused to permit an otherwise unlawful police search of a hotel room to rest upon consent of the hotel proprietor. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819; United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59. In Lustig the manager of a hotel allowed police to enter and search a room without a warrant in the occupant’s absence, and the search was held unconstitutional. In Jeffers, the assistant manager allowed a similar search, and that search was likewise held unconstitutional.
It is true, as was said in Jeffers, that when a person engages a hotel room he undoubtedly gives ‘implied or express permission’ to ‘such persons as. maids, janitors or repairmen’ to enter his room ‘in the performance of their duties.’ 342 U.S., at 51, 72 S.Ct. at 95, 96 L.Ed. 59. But the conduct of the night clerk and the police in the police in the present case was of an entirely different order. In a closely analogous situation the Court has held that a search by police officers of a house occupied by a tenant invaded the tenant’s constitutional right, even though the search was authorized by the owner of the house, who presumably had not only apparent but actual authority to enter the house for some purposes, such as to ‘view waste.’ Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828. The Court pointed out that the officers’ purpose in entering was not to view waste but to search for distilling equipment, and concluded that to uphold such a search without a warrant would leave tenants’ homes secure only in the discretion of their landlords.
No less than a tenant of a house, or the occupant of a room in a boarding house, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel. It follows that this search without a warrant was unlawful.
Stoner, 376 U.S. at 489-90, 84 S.Ct. at 893.
The language used by the court in Stoner clearly shows that a person’s right to be free from a warrantless and unreasonable *105 search and seizure cannot be waived by a third party simply because that person has some type of proprietary interest in the premises. This rule was recognized again recently by the Louisiana Supreme Court in State v. Brown, 09-2456 (La.5/11/10), 35 So.3d 1069:
Longstanding Fourth Amendment jurisprudence precludes a landlord from consenting to the search of his tenant’s residence unless he also lives in the premises or the tenant has vacated the residence. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). When a defendant challenges a warrantless search conducted l^on the basis of third-party consent, the validity of the consent is tested against the rule of United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), in which the Court explained that “the consent of one who possesses common authority over the premises or effects is valid as against the absent, nonconsent-ing person with whom that authority is shared.” Commenting on Matlock, the Supreme Court stated in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006):
It is ... easy to imagine different facts on which, if known, no common authority could sensibly be suspected. A person on the scene who identifies himself, say, as a landlord or a hotel manager calls up no customary understanding of authority to admit guests without the consent of the current occupant.... A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room. In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises.
Randolph, 547 U.S. at 111, 126 S.Ct. at 1521.
Brown, 09-2456, pp. 4-5, 35 So.3d at 1072. In Brown, the police made a warrantless search into one-half of a double residence about which they had information from a citizen informant who told them that she had authority over the premises. The citizen, Ms. Brown, lived on the other side of the double. She told the police that the entire building was owned by her grandmother and that her grandmother had given her “control over the entire building.” Id., p. 2, 35 So.3d at 1070. Ms. Brown said that people inside the other side of the double had weapons and were distributing drugs from the unit; she also said that they were trespassers. Ms. Brown gave the officers permission to enter the apartment, and when they entered they discovered the defendant and his brother sitting on the sofa with drugs on the table in front of them. The defendant subsequently argued that the entry was unlawful as the officers had no warrant, no valid consent, and no exigent circumstances which necessitated the entry without a warrant. The defendant | ,2argued that the police acted unreasonably in relying on Ms. Brown’s simple assertion that she had been given control over the property by the owner. The trial court denied the motion to suppress; the appellate court reversed, finding that the officer acting unreasonably in accepting Ms. Brown’s unsubstantiated assertion of authority. The Supreme Court reinstated the trial court’s ruling, but did so on the grounds that Ms. Brown was a credible informant who stated that the persons in the apartment were trespassers engaged in illegal activity, a report which *106 was bolstered by the fact that the persons inside did not respond to the officers’ knock on the door.
Notably, the Court in Brown did not resolve the issue on the grounds that the police reasonably accepted Ms. Brown’s authority to give consent for a search. The court opined:
For purposes of applying the Rodriguez test for apparent third-party authority to consent, we need not dwell on whether a reasonable police officer in Barrere’s position could have believed that Patrina Brown, who stated she lived in 721 Philip Street, had common authority over 719 Philip Street sufficient to consent to his entry even if he believed that her grandmother had ostensibly given her that authority. Chapman instructs that Ms. Brown’s grandmother herself could not have given consent to enter the premises without the tenant’s permission.
Brown, 09-2456, p. 7, 35 So.3d at 1073.
Thus, as either a landlord or hotel owner, Ms. Jones could not consent to the search. Stoner; Brown. However, as held in United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), a search does not violate the Fourth Amendment if the police have obtained the consent of a third party who possesses common authority over the premises. Thus, in the instant case, the defendant’s girlfriend, who apparently was staying in Room 305 with the defendant, would arguably possess such common authority. However, there was no evidence presented by the State to show that Ms. Rison was a co-occupant of Room 305.
| ^Nevertheless, the search could be upheld if it passed the constitutional test of reasonableness under Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), in which the Court considered an issue left open in Matlock: “Whether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so.” Rodriguez, 497 U.S. at 179, 110 S.Ct. at 2796.
In Rodriguez, the defendant’s girlfriend had lived with him, but she moved out a few weeks before his arrest. She contacted the police to report that he had beaten her, and she told them that he was asleep in his apartment. She told the officers that she had a key to the apartment, referred to the apartment as “our” apartment, and told them that she still had clothing and furniture at the apartment. She unlocked the apartment and invited the officers inside, where they saw drugs lying in plain view. They entered the defendant’s bedroom, where he was sleeping, and found more contraband. In support of his claim that the evidence found in the apartment should be suppressed, the defendant pointed out that his girlfriend had moved out of the apartment weeks before, and her name was not on the lease. Based upon these facts, the Court found that the girlfriend had no actual common authority over the apartment to permit her to consent to its search. The Court found, however, that the evidence need not be suppressed if the officers reasonably believed that the girlfriend had apparent common authority over the apartment. The Court remanded the case for a determination of whether the officers’ belief was reasonable.
Likewise, in State v. Wheeler, 04-0953 (La.App. 4 Cir. 3/9/05), 899 So.2d 84, this Court found that the owner of an apartment where the defendant had stayed for a few days could consent to its search. Citing Illinois v. Rodriguez, this Court found that the officers reasonably believed that *107 the owner of the apartment had | ucommon control over the apartment. Wheeler had been released from prison only a few days before his arrest, and the owner of the apartment, who was also Wheeler’s employer, had allowed Wheeler to stay in an unfinished apartment in the front of a building where the owner lived. The owner had granted Wheeler access to the living room in the owner’s apartment. This Court found that Wheeler had no reasonable expectation of privacy in the apartment where he slept, and the owner had control over that apartment.
In State v. Gettridge, 08-0786, (La.6/6/08), 987 So.2d 247, the person who consented to the search told the officers she was the lessee of the apartment. In finding that the officers were justified in accepting her offer of consent, citing Illinois v. Rodriguez, the Court stated: “A warrantless search may be valid if facts available to the officers at the time justified their reasonable, albeit erroneous, belief that the one consenting to search had authority over the premises.” Gettridge, 08-0786, p. 1, 987 So.2d at 247. Likewise, in State v. Molette, 01-194 (La.App. 3 Cir. 10/3/01), 798 So.2d 1113, the court found a reasonable belief in apparent common authority where the person who consented to the search told the officers that her uncle owned the residence and allowed her and her friends to “hang out” there.
After a review of the testimony of Det. Stovall, we conclude that the trial court in this case erred in upholding the authority of Ms. Jones to consent to the search of the hotel room in which the defendant resided. Contrary to the trial court’s references to the premises as something other than a hotel, the testimony of Det. Stovall can only lead to the finding that the Gladstone Hotel in fact was a hotel. Furthermore, the fact that the detective asked the defendant in which specific room of the hotel he resided, and obtained a response which corroborated the information provided by the informant, undercuts any arguable reasonable belief on Det. Sto-vall’s part that Ms. Jones had common authority over the 115individual hotel room as if the premises were a family home, over which the parent has full unfettered common access and authority (as the trial court concluded), and not an actual hotel in which the individual tenants/guests have some reasonable expectation of privacy.[2]
Moreover, in marked contrast to Get-tridge, Molette, and even Brown, the State presented no testimony indicating that Ms. Jones ever represented to Det. Stovall that she had the authority to consent to a search of her adult son’s residence, which she happened to own. The only testimony was to the effect that she was asked to give consent and did so, not that the detective was in possession of any facts upon which he could rely to find that she had any authority. Instead, it appears that Det. Stovall simply believed that a hotel owner can give valid consent to the search of a hotel room. Considering the jurisprudence, such a belief is not reasonable nor does it justify the failure to seek a warrant before searching.
The sole basis for his argument regarding the statement is that it was the direct result of the illegal seizure of physical evidence from his room, and thus is “fruit of the poisonous tree.” This doctrine was explained at length is Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Essentially the doctrine serves to exclude from evidence *108 the direct and indirect products of illegal violations of the Fourth Amendment. The Court in Wong Sun, recognized, however, that not all evidence which is arguably the fruit of the poisonous tree requires exclusion. Rather, the United States Supreme Court has specifically rejected a per se “but for” causation test as a basis for a decision to suppress evidence. Id.; see also Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978); State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282; and, State v. Broussard, 99-1054 (La.App. 4 Cir. 5/22/02), 819 So.2d 1141.
1 [(¡There is no evidence in the record before us to indicate that there was any temporal break or any intervening circumstance between the seizure of the evidence and the defendant’s statement, both factors which show that the illegal police conduct is sufficiently attenuated from the confession. See Brown v. Illinois, supra. Thus, we also reverse the trial court’s ruling on the motion to suppress the statement.

CONCLUSION

Accordingly, based on the above, we grant the writ and suppress the physical evidence and defendant’s statement.
WRIT GRANTED; REVERSED.

. This factual conclusion is bolstered by the testimony of Det. Stovall; he stated that upon arriving at the Gladstone Hotel, he went into the hotel and then into the office where he encountered Ms. Jones (7/13/10 Tr. 7).

. Again, it should be noted that none of the contraband was in plain view in the hotel room.