319 So.2d 786 (1975)
STATE of Louisiana
v.
Samuel P. JOHNSON.
No. 56343.
Supreme Court of Louisiana.
October 1, 1975.
*787 Bernard E. Fulghum, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Keith S. May, Research Atty., Research and Appeals Div., Gretna, for plaintiff-appellee.
CALOGERO, Justice.
Defendant, Samuel P. Johnson, was charged with violating R.S. 14:62, the commission of simple burglary of a gas station in Jefferson Parish on August 6, 1974. Defendant was tried by jury in September 1974, found guilty of simple burglary, and sentenced to three years at hard labor. Although four assignments of error were reserved by the defendant, only one was presented in brief and oral argument to this Court; therefore, the others are deemed abandoned. State v. Johnson, 286 So.2d 358 (La.1973).
The defendant assigns as error the refusal of the trial judge to grant his motion to suppress. He argues that his identification by a police officer on the morning in question and the clothes taken from his residence by the police should not have been admitted as evidence in his trial.
The circumstances surrounding the identification of defendant and the seizure of the clothes are these. In the very early morning hours of August 6, 1974, three men burglarized a gas station in Jefferson Parish. They were interrupted in the act by two police officers, Officer Lips and Officer Haase. The officers arrested two of the burglars, but lost the third, who fled the scene. The two burglars who were apprehended told the policemen that the third burglar was named "Sam" or "Sammy." The policemen broadcast the description of the subject with the name "Sammy." After hearing the broadcast, Officer Pallisel and his partner stopped fourth youths walking not far from the *788 scene of the crime and asked them if they knew a young man named Sammy. One of the boys said he did, and told the officers the general area in which the young man lived. The officers went to this area, asking residents if a Sammy lived in the neighborhood. The second person they asked told them that Sammy Johnson lived in a particular house on the block, and the officers knocked on the door and asked a woman (who turned out to be defendant's mother) if Sammy Johnson were at home. She brought her son to the door. Because he fit the general description which had been broadcast, the officers detained defendant Johnson in front of his house while they radioed the two officers who had interrupted the burglars. When these two officers arrived, one of them, Officer Lips, positively identified Samuel Johnson as the burglar whom he had seen fleeing the scene of the crime. Defendant Johnson was then formally arrested. Mrs. Johnson, defendant's mother, was asked if she would allow her home to be searched, and she consented. The officers searched the home and in the second room of the house, which was being used as Mrs. Johnson's bedroom, a green shirt was found which is the item defendant attempted to suppress.
Defendant complains that his detention outside of the house was unreasonable in violation of the Fourth Amendment to the Constitution of the United States. While the facts of defendant's detention are neither stipulated nor totally undisputed, our assessment of what occurred is that defendant came to the door of his own accord and was requested by the police officers to step outside. Clearly there was not an invasion of the house by the policemen and forcible extraction of defendant from his home. The officers confirmed that the defendant's name was Sammy and that he lived in this house which they knew was only three blocks from the scene of the crime in the general direction toward which the suspect had fled. When the officers saw that defendant met the detailed physical description of the suspect and wore a white bracelet as the suspect was wearing, they decided to detain him for a few minutes while they radioed the other two officers. Within thirty minutes Officers Lips and Haase arrived. Officer Lips positively identified defendant as the suspect who had fled. It was then that defendant was formally arrested.
Article 213 of the Code of Criminal Procedure provides that "a peace officer may, without a warrant, arrest a person when:. . . (3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer."[1] We believe that the knowledge which the officers possessed constituted reasonable cause to prompt the arrest of defendant without a warrant. They knew that a crime had been committed in the area; they were searching for the burglar; and they had his description and first name. This case is distinguishable from our holdings in State v. Saia, 302 So.2d 869 (La.1974) and State v. Truss, La., 317 So.2d 177, 1975. In those cases we found that the officers did not have reasonable cause to detain and search the respective defendants because the officers had no reasonable cause to believe that a crime had been or was *789 being committed. Here, however, the officers were searching for the perpetrator of a particular crime and were armed with specific information about him. These officers did have reasonable cause to arrest the defendant at the time they decided that he met the description, although they did not formally arrest him until Officer Lips had positively identified him. There was nothing impermissible about the detention or succeeding formal arrest.
Defendant argues, however, that even if the arrest was a valid one that the search was in violation of the Fourth Amendment of the United States Constitution.
Defendant was arrested in front of his home. He was not asked which room of the home was his bedroom or whether he would consent to a search. His mother did consent to the search and, with her consent but without a warrant, the officers searched the home. In a closet in the second room of the home, which was used as Mrs. Johnson's bedroom, officers found in a laundry basket the green shirt which was the subject of defendant's motion to suppress. In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court reaffirmed the principle that a search, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment. In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) the Supreme Court held that proper consent to search could be given by a third party if he possesses "common authority over [the] premises or effects." In a footnote in Matlock, the Court notes that the "authority which justifies the third-party consent . . . rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 94 S.Ct. at 993. In the Matlock case the consent to search was given by a woman who was cohabiting with defendant, but who was not his wife. Because there was evidence that she shared the bedroom that was searched and its only closet with the defendant, the Court held that she and defendant had common authority over the bedroom and the closet, making the search valid. Applying the rule of the Matlock case to the situation before us, we find that the defendant's mother had common authority with the defendant and the others in the house over at least the second bedroom and the closet in it. Mrs. Johnson had authority to consent to the search which produced the shirt admitted at defendant's trial.
The assignment of error lacks merit.
For the reasons assigned, the conviction is affirmed.
NOTES
[1] C.Cr.P. Art. 213 provides in full that:

"A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence, and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer holds a warrant for the arrest.
A peace officer in close pursuit of a person to be arrested, who is making an arrest pursuant to this article may enter another jurisdiction in this state and make the arrest."