389 So.2d 56 (1980)
STATE of Louisiana
v.
Arthur J. PACKARD.
No. 66829.
Supreme Court of Louisiana.
October 6, 1980.
*57 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Rowley, Dist. Atty., Robert Klees, Glenn E. Diaz, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Loyola Law School Clinic, William J. O'Hara, III, New Orleans, Supervising Atty., Barbara Stavis, Student Practitioners, John M. Lawrence, New Orleans, for defendant-appellant.
BLANCHE, Justice.
Defendant, Arthur J. Packard, following an adverse ruling on his motion to suppress evidence, pleaded guilty to possession of marijuana with intent to distribute, La.R.S. 40:966. He reserved his right to appeal pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced the defendant to serve one year at the Department of Corrections. The defendant now appeals on the basis of one assignment of error; that is, the trial court erred in denying his motion to suppress the evidence. We find no merit to this assignment and confirm the defendant's conviction and sentence.
On August 7, 1977, two officers from the St. Bernard Parish Sheriff's Office went to the home of Mrs. Katherine Packard, the defendant's mother, with a warrant for her son's arrest. The defendant was not at home; rather, the officers were met at the front door by his mother. The officers expressed to Mrs. Packard their belief that her son had narcotics on the premises and, though they did not have a search warrant, they desired to search his bedroom.
The officers testified that, while talking to Mrs. Packard in the front of the house, defendant's wife, Angel Packard, who shared the bedroom with defendant, was in the room but remained silent. They further testified that when they asked Mrs. Packard if Arthur and Angel were paying rent, she said they were not. At the hearing on defendant's motion to suppress, Mrs. Packard denied this, saying that Arthur and Angel paid $35 per week rent. The trial judge obviously believed the officers rather than the mother, just as the trial court believed the police in State v. Bartley, 329 So.2d 431 (La.1976) over the biased witness who granted consent to search.
After talking with Mrs. Packard, the officers asked her to read and sign a consent form, which she did. They then proceeded with her to the defendant's bedroom, conducted the search, and found thirteen plastic bags of marijuana in the dresser drawer of defendant's bedroom.

*58 Assignment of Error Number 1

The sole issue in this case is whether Mrs. Packard could consent to a search of her son's bedroom.
Unreasonable searches and seizures are prohibited by the Fourth and Fourteenth Amendments to the United States Constitution and by the Louisiana Constitution of 1974, art. 1, § 5. A search conducted without a warrant is per se unreasonable unless it falls within one of the specifically delineated exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Williams, 366 So.2d 1369 (La.1978). One of these exceptions is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Morris, 340 So.2d 195 (La.1976).
Mrs. Packard did voluntarily give her consent as required by Schneckloth, supra, to the police officers to search the defendant's room. She signed the search consent form after having been told of its contents, reading it, and having been told that she did not have to comply with the officers' request. Though she testified she was on medication for a back injury, nervous, and afraid the officers would get a search warrant, she noted specifically that no threats or coercion were used to obtain her signature and consent.
Mrs. Packard could voluntarily consent to the search of her son's room. We have previously held that, absent unusual circumstances, a parent possesses at least common authority over the residence occupied by the parent and his child. State v. Wagster, 361 So.2d 849 (La.1978). The defendant's situation is not unusual in this case as several married persons live with their parents, and to have a lock on one's door is a common occurrence. The defendant had to watch television in the common living room, eat in the kitchen, did not have to pay rent and, once separated, continued to live at home in his bedroom. Since no unusual circumstances are presented, the mother could exercise her common authority over the defendant's bedroom. In Wagster, supra, this Court found the father's consent to search his 19 year old son's van was permissible. Here, the Court sees just as clearly the mother's right of access to her son's bedroom and thus, his assumption of the risk that she might allow the bedroom to be searched. State v. Cook, 345 So.2d 29 (La.1977).
Mrs. Packard was the co-owner of the house and, arguably, had access to her son's room just as she did to the rooms of the other five children. She could, therefore, consent to the search. State v. Johnson, 319 So.2d 786 (La.1975) and State v. Broussard, 312 So.2d 325 (La.1975). It is not as though she were a distant landlord, Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), or a night hotel clerk, Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).
Furthermore, the defendant's mother believed she exercised such authority over the room occupied by the defendant, as revealed by her actions. The trial judge felt she had this belief, though she denied it, and it would be erroneous for us to substitute our interpretation when he has judged her credibility and arrived at his conclusion supported by reasonable facts.
An additional factor to consider is the role of Angel Packard in this scenario. She was present when the police arrived, present when her mother-in-law signed the form, and present while the room was searched. Since she lived in the room with the defendant, she obviously had the mutual use of the property. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1942). Agreeably, her silence alone cannot be seen as a voluntary consent on her part to have the room searched. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); State v. Fontenot, 383 So.2d 365 (La.1980). However, her silence in front of the police officers and her mother-in-law certainly would reaffirm the defendant's mother's belief that she could grant the consent and the similar belief of the police officers.
*59 Viewing the totality of the circumstances to see if a third party (the mother) could consent to the search convinces us that this consent was properly given and could have been given. Here, Mrs. Packard believed she had the power to consent as she indeed did; the police believed she was the proper person to consent as she co-owns the house and no rent was being paid; and the defendant's wife, who shared the bedroom with him, idly watched as her mother-in-law consented and the police searched her bedroom. These factors reveal that the mother did have the authority to consent to the search and that it was properly conducted.
The defendant's assignment of error is without merit and his conviction and sentence are affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
CALOGERO, J., dissents.
DENNIS, J., dissents with reasons.
DIXON, C. J., dissents for reasons given by DENNIS, J.
LEMMON, Justice, concurring.
The facts of this case belie a conclusion that defendant's mother had common authority over the area to be searched, and therefore she could not alone give valid consent to the search. In order to find the search valid, it is necessary to consider the effect of the presence of defendant's wife when his mother gave the consent.
As a general rule, consent to search cannot be implied from silence, because a reasonable person, intimidated by the aura of police authority, may yield to a search without voluntarily consenting to it. In this case, however, the search was not conducted merely on the consent that might be implied by the wife's presence. The police conducted the search both on the basis of the consent given by defendant's mother (who owned the house) and the wife's apparent acquiescence in that consent. This combination of circumstances makes the warrantless search reasonable and therefore constitutionally valid.
DENNIS, Justice, dissenting.
I respectfully dissent. I do not find that Mrs. Katherine Packard had common authority over her son's bedroom and would rule that the warrantless search of the bedroom was invalid.
I view the facts of this case as characteristic of the circumstances recognized in Wagster where a parent does not have common authority over a residence occupied by both parent and child. Although the defendant resided in his mother's house, he was a twenty-one year old married man who maintained a separate marital dwelling within this house. The defendant's mother testified without dispute that the room used by Arthur and Angel Packard had a lock on it, for which the couple had the only keys. Furthermore, no one was allowed in the room without the defendant's permission. The defendant and his wife did not frequent other parts of the house, and kept the food which they purchased in a kitchen cabinet separated from food available to others living in the house. This amounts to as separate a living unit as was possible without a physical remodeling of the residence.
To support its conclusion of mutual access to the bedroom, the majority opinion introduces the irrelevant issue of the mother's belief in her power to consent to the search. The authority of a third party to consent to a search is not tested by what a third party might believe, but rather is founded upon the facts of mutual access and control, so that it is reasonable to recognize that the person may permit the search in his own right, and that the other co-inhabitants have assumed the risk that the person might permit the common area to be searched. United States v. Matlock, 415 U.S. 164, 171 n.7, 93 S.Ct. 988, 993 n.7, 39 L.Ed.2d 242, 250 n.7. Katherine Packard's testimony reveals that she signed the consent form because she was unclear whether she had such access as a matter of law, not because of the possession of mutual access *60 or control grounded on the facts of her son's living arrangement within her house, or the fact of Angel's silence under the circumstances. Obviously, her impression that she had the legal authority came from the officers' presence as representatives of the law who came to her house without a warrant and dealt only with her as owner of the house. The officers' own testimony demonstrates that Angel Packard's permission to search was never solicited, and that they did not believe that Angel even possessed the authority to consent to the search. If anything, Angel's silence under the circumstances could have only reinforced Mrs. Packard's impression that the officers believed that she possessed the power to consent as a matter of law. Under the majority's reasoning, police officers are allowed to persuade a person who has no legal training that he has the power to consent to a search of another's property and then use such consent to support the validity of a search.
Nor can I find that the officers conducted a sufficient inquiry into the defendant's living arrangement to form any sort of reasonable belief on their part that Katherine Packard could consent to the search. The crucial determination was one of joint access or control. The officers were satisfied with asking the defendant's mother whether her son paid rent; neither she nor the defendant's wife was asked anything else regarding the married couple's place in the household. While payment of rent is a definite factor to be considered when ascertaining the right of a third party to consent to a search, it should not be a determining factor. Even if rent is being paid, other facts may exist which could establish that the rental agreement does not provide for an area of exclusive possession. United States v. DiPrima, 472 F.2d 550 (1st Cir. 1973); United States v. Mix, 446 F.2d 615 (5th Cir. 1971); State v. Moreno, 27 Ariz.App. 460, 556 P.2d 14 (1976); LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 8.4 p. 731 (1978). Conversely, even if no rent is paid, a minimum inquiry into other circumstances surrounding the living arrangement could establish an area of exclusive possession. Such inquiry is lacking in this case.