CARLTON, J„
for the Court:
¶ 1. A jury in the DeSoto County Circuit Court convicted Anthony Crutcher of selling cocaine. The trial court sentenced Crutcher to sixty years in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Crutcher appeals raising the following issues for this Court’s review: whether (1) the trial court erred in denying Crutcher’s request for a mistrial during voir dire; (2) the trial court erred in finding that a sufficient evidentiary foundation existed for the videotape of the drug sale to be admitted into evidence; (3) the trial court erred in finding that the State established a proper chain of custody allowing the cocaine to be admitted into evidence; and (4) Crutcher’s sentence is proper. Finding no error, we affirm.
*727 FACTS
¶ 2. A grand jury indicted Crutcher as a Mississippi Code Annotated section 99-19-81 (Rev.2007) habitual offender and as a subsequent offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2009) on two counts of the sale of a controlled substance, cocaine. A trial commenced on September 14, 2009, in the Circuit Court of DeSoto County.[1] At the trial, Lieutenant Jeremy Degan, the supervisor of the Special Investigations Division,[2] testified that on June 20, 2007, he and some other agents from the Metro were performing controlled drug transactions on the eastern side of DeSoto County. Lieutenant Degan and the other agents used two confidential informants, Robert Smith and Donna Washington, to aid in the operations. Lieutenant Degan testified that he placed an audio listening device and an audio/video recording device on Smith’s person and that a secondary concealed video recording device was placed inside the vehicle that Smith and Washington were using in the controlled operations. Smith testified at trial that on June 20, 2007, he, at the direction of the Metro, traveled to Molly Wells’s, a/k/a Jennie Walls’s, residence with the intention of purchasing cocaine from her. Smith further testified that Molly was not home when he arrived, so he decided to leave her house. Smith then testified that as he was starting back to his vehicle, Crutcher pulled into the residence. Smith testified that he purchased two rocks of cocaine from Crutcher for forty dollars.
¶3. At the conclusion of the trial, the jury found Crutcher guilty of selling cocaine. The trial court then sentenced Crutcher to sixty years in the custody of the MDOC as a habitual and subsequent offender. Aggrieved, Crutcher appeals.
DISCUSSION
I. MOTION FOR MISTRIAL
¶ 4. During voir dire, a prospective juror asked the prosecutor the following question, which elicited the allegedly prejudicial response:
JUROR: You said the Prosecution is the only one that’s going to have witnesses.
PROSECUTOR: The defense is never required to put on any witnesses. That’s going to be up to the Defendant. I have the burden of proof. I have to prove something to you. Okay? It’s up to the Defense if they want to put on witnesses or offer testimony—
Crutcher objected to the State’s response to the juror’s question and moved for a mistrial, which the trial court subsequently denied. On appeal, Crutcher argues that the State, when conducting voir dire, improperly commented on his right to remain silent and not to testify. The State argues in response that the comments in no way implied that Crutcher’s choice not to testify was improper or indicated that Crutcher was guilty. The State further contends that the trial court gave, without objection, an instruction which was very similar to the alleged prejudicial response made by the prosecutor.
¶ 5. The standard of review utilized by this Court when reviewing a deni *728 al of a motion for a mistrial is abuse of discretion. Tate v. State, 20 So.3d 623, 629 (¶ 13) (Miss.2009) (citing Dora v. State, 986 So.2d 917, 921 (¶ 8) (Miss.2008)). “The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant’s case.” Gilbert v. State, 48 So.3d 516, 521 (¶ 20) (Miss.2010) (quoting Gossett v. State, 660 So.2d 1285, 1290 (Miss.1995)). In determining whether a mistrial is warranted, the trial court possesses considerable discretion since the trial judge is in the best position to measure the prejudicial effect. Id. (citing Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990)).
¶ 6. A defendant’s right to remain silent is a federal and state constitutional requirement. Alexander v. State, 610 So.2d 320, 339 (Miss.1992). “In all criminal prosecutions the accused shall ... not be compelled to give evidence against himself.” Id. (citing Miss. Const, art. 3 § 2[6]). “No person ... shall be compelled in any criminal case to be a witness against himself.” Id. (citing U.S. Const, amend. V). The Mississippi Supreme Court has held that any reference to a defendant’s failure to testify, implying that such failure is improper or indicating that the defendant is guilty, is improper. Dora, 986 So.2d at 923 (¶ 11) (citing Wright v. State, 958 So.2d 158, 161 (¶ 7) (Miss.2007)). The Mississippi Supreme Court further elaborated on the reference to the defendant’s failure to testify by stating the following:
The [S]tate is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to the defendant’s failure to testify by innuendo and insinuation. Shook v. State, 552 So.2d 841, 851 (Miss.1989) (emphasis added). The question is whether the prosecutor’s statement can be construed as commenting upon the failure of the defendant to take the stand. Ladner v. State, 584 So.2d 743, 754 (Miss.1991).
Wright, 958 So.2d at 161 (emphasis added). This approach effectively prevents “the protective shield of the Fifth Amendment” from being “converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case.” [U.S. v.] Robinson, 485 U.S. [25,] 32, 108 S.Ct. 864 [99 L.Ed.2d 23] [(1988)] (quoting United States v. Hasting, 461 U.S. 499, 515, 103 S.Ct. 1974, 1984, 76 L.Ed.2d 96, 110 (1983) (Stevens, J., concurring) (citation omitted)).
“[P]roseeutorial comment must be examined in context!.]” Robinson, 485 U.S. at 33, 108 S.Ct. 864. “When the statement is not an outright violation, this Court will review the facts on a case-by-case basis.” Wright, 958 So.2d at 166 [ (¶ 24) ] (citing Logan v. State, 773 So.2d 338, 348 [ (¶ 38) ] (Miss.2000)). Furthermore, “not every comment regarding the lack of any defense is automatically deemed to point toward the defense’s failure to testify.” Id. (citing Jimpson v. State, 532 So.2d 985, 991 (Miss.1988)).
Dora, 986 So.2d at 923 (¶¶ 11-12). If a question arises as to the prosecution’s comment on the defendant’s failure to testify, each case must be considered on an individual basis on the facts of that particular case. De La Beckwith v. State, 707 So.2d 547, 584 (¶ 148) (Miss.1997) (citations omitted). Even if an error occurs, such comment is deemed harmless beyond a reasonable doubt where the evidence of guilt is “so overwhelming that the jury would have returned a guilty verdict in spite of the prosecutor’s comment.” Id. (citing Lee v. State, 435 So.2d 674, 678 (Miss.1983); Conway v. State, 397 So.2d *729 1095, 1100 (Miss.1980)). The Mississippi Supreme Court explained that this is especially true in cases that do not involve the defendant facing the death penalty. Id.
¶7. Crutcher relies on Hines v. State, 389 So.2d 56, 57 (Miss.1976) to support his argument. In Hines, the prosecutor asked the venire panel, “Do each of you realize that the defendant has the right not to testify in this case? You are not to draw any inference as to guilt or innocence of the defendant whether he does or does not take the stand.” Id. The defense objected and moved for a mistrial, which was subsequently overruled by the trial court. Id. On appeal, the Mississippi Supreme Court reversed, finding that the prosecutor’s remarks coupled with the defendant’s decision not to testify were tantamount to an improper statement on the failure to testify by the defendant. Id. Hines, however, is distinguishable from this ease both factually and legally. In the present case, the prosecutor discussed the defendant’s option of putting on evidence and testimony, while the prosecutor in Hines expressly spoke to the defendant’s right not to testify. In addition, the Court in Hines relied on Mississippi statutory authority which has since been repealed.[3]
¶ 8. In the case at hand, this Court finds no abuse of discretion on the part of the trial court in denying Crutcher’s motion for a mistrial. In denying Crutcher’s motion, the trial court stated the following outside the presence of the jury:
First and foremost, Mr. Jubera’s [the prosecutor] statements — first of all, obviously they were correct statements of the law. The [defendant does not have to call witnesses and that’s their decision, some form of that statement. I will note also that statement is very close to one of the standard Court’s jury instructions that is given that says the defendant does not have to put on any evidence at all as to their innocence, so to speak. The instruction will speak for itself, but does not have to put on any evidence on the topic of their guilt or innocence. Mr. Jubera’s statement I feel does not reference a failure of Mr. Crutcher to testify or call witnesses. I will note that many, many times the defense lawyer goes over that with the jury panel; but that’s a strategic decision. I will note that Mr. Jones made the strategic decision not to go over that in this case. So I don’t feel like that it meets the criteria that would require a mistrial. As indicated, as to any admonishment of the jury, they will get that by the jury instruction which indicates that Mr. Crutcher does not have to put on any evidence at all upon the subject.
¶ 9. This Court recognizes the limited standard of review that applies when reviewing a trial court’s denial of a motion for a mistrial. In the case at hand, we recognize that the prosecutor simply remarked that the “defense is never required to put on any witnesses” and did not speak to Crutcher’s failure to testify nor his right to remain silent. Therefore, *730 we find no abuse in discretion in the trial court’s denial of the motion and hold that this issue is without merit.
II. EVIDENTIARY FOUNDATION
¶ 10. In Crutcher’s second assignment of error, he argues that the trial court erred in allowing the videotape of the drug sale into evidence, arguing that the State failed to lay a sufficient eviden-tiary foundation for the evidence in accordance with Mississippi Rule of Evidence 901(b)(1). Specifically, Crutcher argues that the State did not put on evidence that the recording equipment was operating correctly and that there was no showing, through a person with knowledge, that the video recording displayed an accurate representation of the drug buy. In response, the State asserts that the trial court did not abuse its discretion in allowing the videotape of the drug sale into evidence, as the videotape was properly authenticated by the two police officers who testified at trial that authenticated the videotape.
¶ 11. This Court employs an abuse-of-discretion standard of review when reviewing for the admission or exclusion of evidence. Newell v. State, 49 So.3d 66, 71 (119) (Miss.2010) (citing Mingo v. State, 944 So.2d 18, 28 (¶ 24) (Miss.2006)). The supreme court has previously stated that “[w]e will not reverse the trial court’s evidentiary ruling unless the error adversely affects a substantial right of a party.” Id. See M.R.E. 103(a).
If 12. Prior to its admission into evidence, a document or photograph must be authenticated. Conway v. State, 915 So.2d 521, 526 (1118) (Miss.Ct.App.2005) (citing M.R.E. 901). “The same standards used in determining the admissibility of photographs are applicable to the admission of videotapes.” Griffin v. State, 918 So.2d 882, 884 (¶ 9) (Miss.Ct.App.2006) (citing Seals v. State, 869 So.2d 429, 433 (¶ 13) (Miss.Ct.App.2004)). Mississippi Rule of Evidence 901 speaks to the authentication requirements for admission of evidence. Rule 901 provides the following in pertinent part:
(a) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
(b) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
(1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.
This Court has previously held that in order for a videotape to be entered into evidence through a witness, it must be authenticated “by someone who can testify that the events on the tape accurately depict the transaction as it occurred on the day in question.” Conway, 915 So.2d at 526 (¶ 19) (citing Seals, 869 So.2d at 433 (¶ 13)).
¶ 13. In the present case, the State presented the testimony of Lieutenant De-gan and Agent Danny Wilkey to authenticate the videotape of the drug transaction that occurred on June 20, 2007. In response to the State’s questions during direct examination, Lieutenant Degan testified as follows:
Q: Were you employed or on duty on June 20, 2007?
A: Yes, sir.
Q: What were your duties on that day?
A: We were performing controlled drug transactions on the eastern side of the county.
*731 Did you employ a confidential informant in that? O’
We did. <1
Who was that confidential informant? O’
Robert Smith and his wife, Donna Washington.
What was your role in that investigation? «©
I was a cover unit and just assisting the case agents with preparing for the transactions.
In preparing for the transactions, what if anything did you do? <©
After the informants were searched, I placed upon Mr. Smith an audio listening device as well as an audio/video recording device.
Was there another — aside from the one that you just talked about, was there another audio/video device used? O’
Yes, sir. We used a secondary concealed device inside the vehicle, a concealed video device, a concealed video recording device.
Did those audio/video devices successfully capture audio and video? O’
Yes, sir. <!
Once the audio and video is successfully captured, what’s the procedure for maintaining that audio and video? O
The device is taken back to the office. It’s connected to a desk top computer. There is a specialized program that we use with the device that prevents us from editing the video. We transfer the data from the device to the computer, and from there we put it on some form of hardware, i.e., CD.
Did you have an opportunity to review a CD or DVD in this case? <©
I did.
Q: I’m handing you an item now. Do you recognize that?
A: Ido.
Q: What do you recognize it to be?
A: This is the video, disk, DVD disk that has the video from our case number DC-07-0110 from June 20, 2007.
Q: Did you have an opportunity to review it prior to this case?
A: I did.
Q: Is it a fair and accurate representation?
A: Yes, it is.
Agent Wilkey testified to the following during direct examination by the State:
Q: What steps do you take to protect— when using a confidential informant, what steps do you take to protect the integrity of your investigation?
A: For one thing you do is you try to gauge the person and make sure they have some type of reliability. You set up times for them to call you and make sure their responsible enough to call you when you tell them to. Before you go do a buy, you make sure you search them and their person to make sure they don’t have any guns or knives or any drugs on them at the time. Also, we place an audio transmitting device on their person, which all that does is anything that’s in close range around them, it transits with that audio system, and we can listen to it here. So at all times we have some type of audio surveillance. We know what’s going on. We know what he’s saying and the bad guy is saying. So if you were to have any distress code or anything like that that he needs help or she *732 needs help, that we might be able to come in and intervene.
Q: Is there a log kept of a transaction?
A: Yes.
Q: Was a log kept in this instance?
A: Yes, sir.
Q: What information is on that log?
A: It’s called a purchase of evidence sheet. It’s basically [a] chronological log of times of when we searched the informant or informants, when we searched their vehicle, when money was issued to them, who placed a wire on them, what time they arrived at the location, when they met the suspect, what time they bought the illicit drug from the suspect and so on.
Q: The procedures that you just testified about, were they followed in this case?
A: Yes, sir. They were.
Q: And did you participate in an investigation on June 20th of 2007?
A: Yes, sir. I did.
Q: Briefly explain to us what you did in the course of that investigation?
A: We met with the informants — well, I guess their name is used now— Robert Smith and Donna Washington at what’s called an undisclosed prebuy location. It’s just a place out in the field so we wouldn’t have to meet them at the office that’s secluded and can’t see easily from the road. Once we’ve met with them, Officer Cassada, that y’all met earlier this morning, searched Mr. Smith and the female Donna Washington was searched by Agent Cody, who’s currently in Japan living the good life right now. And then Mr. Cassada searched the vehicle, and in all the searches, nothing was found, no contraband, no weapons. No illicit drugs. Lieutenant Degan placed the audio transmitting device that I was talking about on Mr. Cassada who just got off the stand, and Commander Lamfear wired the vehicle, placed the Peter in the vehicle, which helps the audio signal get out a little bit further, kind of like a radio antenna, so we could be further back to listen. And once we did that and performed the search of the vehicle, we turned the audio and video equipment on, and then the informants left that location towards where they were going to meet the suspect at, and we followed along behind them.
[[Image here]]
Q: You testified about the recording devices. Did you have an opportunity to review what was recorded?
A: Yes, sir.
[[Image here]]
(Videotape was played for the jury).
Q: Agent Wilkey, are you familiar with this?
A: Yes, sir.
Q: Where is this location at?
A: It’s 7108 Center Hill Road in Olive Branch, Mississippi.
Q: What county?
A: De[S]oto County, sir.
[[Image here]]
(Videotape was played for the jury)
Q: Agent Wilkey, what camera was that taken from? Generally speaking, where was it located?
A: It was located on the driver’s side door facing out the passenger’s side door. The reason why we placed one there is, you know, with some deals, a lot of people will come up to the passenger side window and just *733 do the transaction there. That’s why the camera was at the passenger’s side.
Q: Is there a second video?
A: Yes, sir. He had a video concealed on his person, which the next video showed a different view on that transaction.
(Videotape was played for the jury)
Q: Agent Wilkey, are you familiar with this location?
A: Yes.
Q: Where is it, sir?
A: 7108 Center Hill Road in De[S]oto County, Mississippi.
Q: Is that the same location that you previously identified?
A: Yes, sir.
(Videotape was played for the jury)
Q: Agent Wilkey, were all policies and procedures followed in this case?
A: Yes, sir. They were.
Q: Has there been any, to your knowledge, tampering with the evidence?
A: No, sir.
During cross-examination of Agent Wilkey by the Defense, the following exchange occurred:
Q: Now, when this — you weren’t at the scene of this alleged crime, were you?
A: No, sir. I wasn’t on that property address with them when it happened, but I was within audio — I could hear the transaction over the body wire, sir.
¶ 14. Upon a review of the record, we find that Lieutenant Degan and Agent Wilkey were proper witnesses to present testimony to authenticate the videotape that depicted the drug sale. See Conway, 915 So.2d at 526 (¶¶ 18-19). While we acknowledge that Lieutenant Degan and Agent Wilkey were not at the actual property address while the drug transaction was occurring, we find that the record reflects that the officers’ testimonies satisfied the authentication requirements of Rule 901(b)(1). We note that Lieutenant Degan and Agent Wilkey testified to the following: their officers placed the audio/video recording devices on Smith’s person, as well as the vehicle employed by Smith during the operation; they were familiar with the scene; and they listened by audio device to the drug transaction as it occurred. The record also reflects that Lieutenant Degan established a proper chain of custody for the videotape through his testimony, thereby allowing the videotape to be admitted into evidence. This Court, therefore, finds that the videotape was sufficiently authenticated “by someone who [testified] that the events on the tape accurately depict[ed] the transaction as it occurred on the day in question.” Conway, 915 So.2d at 526 (¶ 19). As such, we hold that the trial court’s decision to allow the videotape into evidence was not an abuse of discretion. This issue lacks merit.
III. CHAIN OF CUSTODY
¶ 15. In his third assignment of error, Crutcher argues that the chain of custody for the cocaine was insufficient; thus, the trial court should have excluded the evidence. The State responds that the chain of custody was established and that Crutcher failed to show that any indication of tampering or substitution of evidence existed.
¶ 16. When reviewing a trial court’s admission of evidence, this Court applies an abuse-of-discretion standard of review. Shumaker v. State, 956 So.2d 1078, 1084 (¶ 18) (Miss.Ct.App.2007) (citing Smith v. State, 839 So.2d 489, 496 (¶ 17) (Miss.2003)). We stated:
*734 Trial court decisions in matters regarding the chain of custody of evidence will not be disturbed absent a finding of abuse. Anderson v. State, 904 So.2d 973, 979 (¶ 19) (Miss.2004). The “test for the continuous possession [I.e., ‘chain of custody’] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.” Id. (quoting Gibson v. State, 503 So.2d 230, 234 (Miss.1987)). “‘In such matters, the presumption of regularity supports the official acts of public officers,’ and, thus, the burden to produce evidence of a broken chain of custody is on the defendant.” Id. (quoting Nix v. State, 276 So.2d 652, 653 (Miss.1973)).

Id.

¶ 17. After reviewing the present case, we find that the record reflects that Crutcher raised no evidence or reasonable inference to support the assertion that the cocaine was tampered with or that a substitution of the evidence occurred. Therefore, Crutcher failed to meet his burden of proof to establish a break in the chain of custody to overcome the presumption of regularity. See Anderson, 904 So.2d at 979 (¶ 19). At trial, Lieutenant Degan and Agent Wilkey both testified to the chain of custody for the drug evidence. Lieutenant Degan testified that after he and the other officers placed audio/video devices on Smith’s person and in the vehicle used by Smith in the operation, Smith and Washington departed and returned shortly thereafter. Lieutenant Degan further testified that he received an amount of base cocaine from Smith upon their return and placed it in a plastic bag until it was transported to the office, where it was placed in a heat-sealed bag and labeled. Lieutenant Degan also identified the cocaine at trial as the base cocaine given to him by Smith on June 20, 2007. Lieutenant Degan then testified to the procedures employed by the Metro when possessing and storing evidence. Lieutenant Degan testified that the standard procedures[4] were followed in this case and that the evidence was not tampered with to his knowledge. Agent Wilkey also testified that all policies and procedures relating to the preservation of evidence were followed in the present case and that the evidence to his knowledge was not tampered with.
¶ 18. Crutcher argues that the Metro’s purchase of evidence form incorrectly states the date of the drug sale as May 24, 2007, causing a contradiction with the testimony from both officers as to when the drug sale actually occurred. The record reveals, however, that Agent Wilkey explained this discrepancy during redirect examination by the State by testifying to the following:
Q: Can you explain that date, please?
A: Yes, sir. That was a typographical error on my part.
Q: Does that change any of the — review it, take a look at it and make sure. Does that change any of the substance of that?
A: No, sir. The date is wrong, but the case number and the times and the notes of who did what at what times coincide with that case number. So the date is wrong. It should be June 20th, 2007.
Furthermore, this Court notes that Crutcher was also indicted on May 24, 2007, in Count I of the indictment for selling cocaine. We have held that “proof *735 is not necessarily defective just because a technical problem with one of the links in the chain is shown”; therefore, we find this issue is without merit. Robinson v. State, 733 So.2d 333, 336 (¶ 6) (Miss.Ct.App.1998); see Cockerham v. State, 752 So.2d 431, 434 (¶ 9) (Miss.Ct.App.1999) (finding “[p]roof regarding the chain of custody is not necessarily defective just because a technical problem with one of the links exists”).
¶ 19. Crutcher also argues that a proper chain of custody was not established because the cocaine was not entered into a secure vault until a week after the drug sale. We find this argument to be unsupported by the evidence in the record. Agent Wilkey summarized the chain of custody of the cocaine, providing insight as to why the cocaine was not placed in a “secure vault” until June 27, 2007, by testifying to the following:
The reason — these forms are a little difficult, and I wish I could blow it up for you. It lists the suspect, correct, and then it’s got the date and the time that the evidence went to the next person below it. So here it says suspect, June 20, 2007, at 16:49, 4:49, and it went to at that time the informant, who’s the informant. And then it went from the informant at this time and date to Lieutenant Degan. From Lieutenant Degan this time and date to the vault. And then from the vault, on the 27th this time and date it went to myself, Agent Wilkey, because I took it down to the [c]rime [l]ab. And I gave it to Ms. Colleen Lester. Agent Wilkey, this time and date, to Colleen Lester. Now, Colleen Lester didn’t give it to nobody else [sic] so there is no time and date by her name. The next person is Jacqueline Johnson who Agent Leslie retrieved the dope from when he went down to pick it up at a later date on the 24th of 2007, which they tested it on July 19th, 2007, but we didn’t go down there and pick it up until the 24th of July, 2007.
¶ 20. After reviewing the record under the limited abuse-of-discretion standard of review, we find that sufficient evidence as to the chain of custody was presented at trial to allow the jury to make the determination that the State maintained proper custody of the evidence at issue. We also recognize that Crutcher failed to meet his burden in proving a break in the chain of custody as required by Mississippi law to overcome the presumption of regularity. See Anderson, 904 So.2d at 979 (¶ 19). Accordingly, we find no abuse of discretion in the trial court’s decision to admit the cocaine into evidence, as a proper chain of custody existed. This issue is without merit.
IV. CRUTCHER’S SENTENCE
¶ 21. In Crutcher’s final assignment of error, he argues that his prior convictions failed to meet the requirements of a section 99-19-81 habitual offender and that his sentence was unconstitutionally disproportionate. The State responds that Crutcher’s sentence was valid and legal. The State further argues that Crutcher is procedurally barred from arguing that the habitual-offender requirements were not met, as he did not raise this issue before the trial court. The State also asserts that Crutcher’s sentence was not unconstitutional, as it was within the statutory guidelines and at the court’s discretion. See Hoops v. State, 681 So.2d 521, 537-38 (Miss.1996) (citing Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)).
A. Habitual-Offender Status
¶22. The trial court sentenced Crutcher to sixty years in the custody of the MDOC as a habitual offender pursuant to section 99-19-81 and as a subsequent offender pursuant to section 41-29-147. *736 Crutcher argues that his prior convictions[5] do not meet the requirements of the habitual-offender statute. However, we find that Crutcher failed to raise the issue regarding his sentence at the sentencing phase; therefore, he is procedurally barred from raising it on appeal. See Heidelberg v. State, 45 So.3d 730, 732 (¶ 6) (Miss.Ct.App.2010) (finding “[w]hen an accused fails to object to the habitual[-]offender issue during the sentencing phase, he is procedurally barred to do so the first time on appeal”).
¶ 23. Notwithstanding the procedural bar, we shall address these assertions. Crutcher’s prior convictions are: (1) Cause No. 94-10135 in the Criminal Court of Shelby County, Tennessee, unlawful possession of marijuana with intent to sell, sentenced to one year in the workhouse, and (2) Cause No. 94-04728 in the Criminal Court of Shelby County, Tennessee, sale of cocaine, sentenced to three years in the workhouse.
¶ 24. Crutcher argues that his prior convictions fail to satisfy the requirements of section 99-19-81, which provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
“[A]n individual is not required to have actually served any prison time in order to be sentenced as a habitual offender,” and time served in a workhouse sufficiently satisfies the statutory requirements of section 99-19-81. Byrne v. State, 30 So.3d 1264, 1265 (¶ 4) (Miss.Ct.App.2010) (quoting Davis v. State, 5 So.3d 435, 441 (¶ 14) (Miss.Ct.App.2008)).[6] See also Wilhite v. State, 791 So.2d 231, 247 (¶ 46) (Miss.Ct.App.2000) (finding no error in the trial court’s ruling that a workhouse qualifies as a state penal institution). Therefore, we find that each of Crutcher’s prior felony convictions satisfy the statutory requirement of serving time in a penal institution. In accordance with Byme and Wilhite, we find that Crutcher’s prior felony convictions met the habitual-offender requirements of section 99-19-81. Thus, this issue is without merit.
B. Unconstitutional Sentence
¶ 25. Crutcher argues that his sentence is unconstitutional because it is too severe and clearly disproportionate to the offense. Crutcher asserts that the enhanced sentence of sixty years, imposed for committing repeated drug offenses, constitutes a life sentence. In response, *737 the State asserts that Crutcher’s sentence is within the statutory guidelines and, thus, is not unconstitutionally severe.
¶ 26. Mississippi follows the general rule that “a sentence should not be disturbed on appeal so long as it does not exceed the maximum allowed by statute.” Davis v. State, 817 So.2d 593, 597 (¶ 14) (Miss.Ct.App.2002) (citing Fleming v. State, 604 So.2d 280, 302 (Miss.1992)). The sentencing of an offender falls within the discretion of the trial judge. Id. at (¶ 15) (citing Hoops, 681 So.2d at 537). This Court has held that:
A sentence that is “grossly disproportionate” to the crime committed is subject to attack on Eighth Amendment grounds applying the proportionality test from Solem v. Helm, 463 U.S. 277, 290-91, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); but see Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (the Solem test should only apply when a comparison of the crime to the sentence leads to an inference of gross disproportionality).
Cummings v. State, 29 So.3d 859, 861 (¶ 4) (Miss.Ct.App.2010).
¶ 27. The trial court sentenced Crutch-er to serve a term of sixty years in the custody of the MDOC as a section 99-19-81 habitual offender and a section 41-29-147 subsequent offender. Crutcher’s sentence complies with section 41-29-147, which provides:
Except as otherwise provided in Section 41-29-142, any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.
For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs.
Crutcher’s sentence also is in compliance with section 99-19-81. We have held on numerous occasions that “[sjentences under the habitual-offender statute do not constitute cruel and unusual punishment.” Cummings, 29 So.3d at 861 (¶ 5) (citing Huntley v. State, 524 So.2d 572, 575 (Miss.1988); Jackson v. State, 483 So.2d 1353, 1355 (Miss.1986); Baker v. State, 394 So.2d 1376, 1378-79 (Miss.1981)).
¶ 28. The indictment charging Crutcher as a habitual offender and subsequent offender listed two prior convictions of the unlawful possession of marijuana with intent to sell and of the sale of cocaine. In addition, in the present case, the jury convicted Crutcher of the sale of a controlled substance, cocaine. In light of the gravity of Crutcher’s current drug offense and his prior drug offenses, the sixty-year sentence imposed on Crutcher by the trial court does not give inference of gross dis-proportionality. In accordance with Cummings, where the Court found that Cummings’s sentence did not give rise to the inference of gross disproportionality; thus, there was no need for a proportionality test, we will not proceed with an Eighth-Amendment analysis. See Cummings, 29 So.3d at 861 (¶ 6). We will note, however, that the trial court in the present case did conduct a proportionality analysis and, after doing so, found Crutcher’s sentence to be proportionate. As such, this issue lacks merit.
¶ 29. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIXTY YEARS IN THE *738 CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL AND SUBSEQUENT OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. Crutcher was only tried on count two in the trial that commenced on September 14, 2009, as count one, which charged Crutcher with selling cocaine to Smith and/or Washington on or about May 24, 2007, for eighty dollars, was remanded to the file.

. The Special Investigations Division was previously known as the DeSoto County Metro Narcotics Unit (Metro).

. In Hines, it becomes evident that the Court relied on Mississippi Code Annotated section 13-1-9 (1972) in making its decision to reverse and remand the case when the Court stated the following: "In any event the prosecutor’s remarks, coupled with the defendant's subsequent decision not to testify is tantamount to a comment on the defendant’s failure to testify and is therefore in violation of section 13-1-9.” Hines, 339 So.2d at 57. Mississippi Code Annotated section 13-1-9 (1972) provides that: "The accused shall be a competent witness for himself in any prosecution for crime against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel.” Id. (citing Miss.Code Ann. § 13-1-9). The Legislature repealed section 13-1-9 in 1991. See Wright, 958 So.2d at 164 (¶ 19).

. Lieutenant Degan testified that the standard procedure was that upon return to the office, the evidence goes into a temporary secure vault and is later transported to the Mississippi Crime Laboratory.

. Crutcher argues that under his prior convictions, he was not ever sentenced to a state or federal penal institution as required by our habitual-offender statute, as he served time only in the county workhouse.

. In Byrne, Byrne, like Crutcher, argued that he did not meet the habitual-offender requirements of section 99-19-81 because his prior felony convictions were not served in a Tennessee Department of Corrections facility, but in a workhouse. Byrne, 30 So.3d at 1265 (¶ 4). Relying on the holding in Davis, this Court held that Byrne met the habitual-offender statutory requirements regardless of where or how Byrne had served his prior sentences. Id. The Court went on to explain that Byrne had previously been convicted of two felonies for which he was sentenced to terms of one year or more in a state and/or federal penal institution. Id.