IRVING, P.J.,
for the Court:
¶ 1. A Hinds County jury convicted Dequan Berry of two counts of armed robbery. The Hinds County Circuit Court sentenced him to two concurrent terms of thirty years, with eighteen years to serve and twelve years .suspended on each count, all in the custody of the'Mississippi Department of Corrections. In addition, Berry was sentenced to five years under the gun-enhancement statute,[1] with the sentence to run consecutively to the armed-robbery sentences.,
¶ 2. Berry argues that the circuit court erred in (1) denying his motion for a mistrial, (2) failing to sustain his objections during the cross-examination of a witness, and (3) depriving him of a'fundamentally fair and impartial trial due to the cumulative errors that occurred during trial.
¶ 3.'We find no merit to any of Berry’s arguments. Therefore, we affirm.
*86 FACTS
¶ 4. On April 15, 2012, at around 10:30 p.m., Skyler Watts and Kisha Catchings returned, from Walmart to their apartment complex, the Woodlands, which is located in Jackson, Mississippi. As they exited their vehicle and headed toward a stairwell, a young man approached them with a gun. Although the young man was wearing a bandana over his face, Skyler and Kisha recognized the man as Berry, who had once lived at the Woodlands. Berry demanded money, and, initially, Skyler and Kisha stated that they did not have any cash. Berry then forced Skyler and Kisha to go upstairs to their apartment, where he continued to demand money. Eventually, they told Berry that there was cash in a tin can in their kitchen. While retrieving the money, Berry ordered them to lie on the apartment floor, and they complied. After Berry took the money, he left the apartment.
¶ 5. At trial, Berry put on an alibi defense. His first witness, Carolyn Washington, testified that on the night of the robbery, Berry was playing cards with her and Berry’s grandmother, Mamie Aaron. According to Carolyn, they played until approximately 10:30 p.m. or 11:00 p.m. Mamie corroborated Carolyn’s testimony but added that later in the evening, she and Berry had watched television.
¶ 6. Berry testified in his own defense. He denied that he had committed the armed robberies and explained that on the night of the robberies, he had played cards with Mamie and Carolyn at Mamie’s apartment. He also testified that before living with his grandmother, he had lived with his mother at the Woodlands. Berry acknowledged knowing Skyler as “Little Fly” and admitted that when he lived at the Woodlands, Skyler lived upstairs.
¶ 7. After the close of all the evidence, the jury found Berry guilty of two counts of armed robbery. He timely filed a post-trial motion challenging the sufficiency and weight of the evidence undergirding the verdict. The circuit court denied the motion, and this appeal ensued.
DISCUSSION

1. Motion for a Mistrial

¶8. Berry argues that the circuit court erred in allowing the prosecutor to comment on his right to remain silent after his arrest; During the prosecution’s closing arguments, the prosecutor commented:
They’re telling you — they pointed him out in the courtroom yesterday. They knew him and still do. Well, so we get to the point where they know him. Then[,] the witnesses come forward. Well, Ms. Aaron and Ms. Washington, they testify, “Look, well, we were playing cards.” Well, [Berry] obviously said that after he was arrested....
At this point, Berry’s counsel objected, stating that it was impermissible for the prosecution to speak on Berry’s right to remain silent. He then moved for a mistrial. The circuit judge overruled the objection and denied the motion for a mistrial, stating “that it was an appropriate closing argument remark.”
¶ 9. This Court stated in Crutcher v. State, 68 So.3d 724, 728 (¶6) (Miss.Ct.App. 2011) (internal citation and quotation marks omitted):
The State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to the defendant’s failure to testify by innuendo and insinuation. The question is whether the prosecutor’s statement can be construed as commenting upon the failure of the defendant to take the stand. This approach effectively prevents the protective shield of the Fifth Amendment from being converted into a sword that cuts back on the area of *87 legitimate comment by the prosecutor on the weaknesses in the defense case. Prosecutorial comment must be examined in context. When the statement is not an outright violation, this Court will review the facts on a case-by-case basis. Furthermore, not every comment regarding the lack of any defense is automatically deemed to point toward the defense’s failure to testify.
If a question arises as to the prosecution’s comment on the defendant’s failure to testify, each case must be considered on an individual basis on the facts of that particular case. Even if an error occurs, such comment is deemed harmless beyond a reasonable doubt where the evidence of guilt is so overwhelming that the jury would have returned a guilty verdict in spite of the prosecutor’s comment.
Here, the prosecutor was commenting on the evidence presented at trial and was attempting to inform the jury about the statement that Berry gave after being arrested, but before the prosecutor could do so, Berry’s counsel objected. Berry’s right to remain silent was not at issue because he had waived that right and had voluntarily given a statement, which had been admitted into evidence without objection from Berry. In addition, Berry took the stand and testified in his own defense.
¶ 10. During closing arguments, it is perfectly okay for either the State or the defense to comment upon the evidence produced during the trial. After reviewing the record, we cannot find that the prosecutor’s comment was improper or that the circuit judge erred in allowing the prosecutor to proceed with his closing argument. This issue is without merit.

2, Objections During the Cross-examination of Mamie Aaron

¶ 11. Berry also argues that the circuit court erred in allowing the prosecution to elicit irrelevant testimony from Mamie during her cross-examination. During the cross-examination, the following colloquy occurred:
Q. In March 2012, how many children did your daughter Lakeisha have?
[DEFENSE ATTORNEY]: Your Hon- or, object to relevance.
THE COURT: I’ll overrule. It’s cross-examination.
* * *
A. She has six children.
* * *
Q. Do you know whether or not [Berry] was the oldest, the middle, the youngest?
A. I know[, he is] the oldest.
Q. Okay. How many boys and jhow many girls did she have? J
A. Two boys and four girls.
Q. Okay. Now when [Berry] came to live with you in March of 2012, was that the first time he had ever come to live with you?
A. On his own, yes.
Q. Okay. And tell me what you mean by “on his own.”
A. Well, they used to live with me a long time ago.
* * *
Q. And when did they move out from living with you?
A I don’t really — can’t recall what— what day it was.
⅝ ⅜
Q. Now what kind of things did you do to help your daughter with her children?
A. What you mean, what kind of things?
*88 Q. Just — did you do anything to help • your daughter with her children?
[DEFENSE ATTORNEY]: Your Hon- or, I’m going to object again to relevance.
THE GOURT: I’m- going to overrule .and proceed.
⅜ , ⅜ *
A. Well, I’d buy them clothes, but we didn’t do no parties like that.
Q. Okay. No parties. Okay. Did you help with their homework?
A. Yes.
Q. Okay. How often?
[DEFENSE COUNSEL]: Objection, You[r] Honor.
Following this objection, during a bench con ’arenes, the circuit judge. asked the pro seeutor: “Where are you heading and why is it relevant about the relationship wit! i her daughter and the mother’s children?” The 'prosecutor replied, “I’m getting there.”' The circuit judge then stated, “Well you need to get there.;.. I’ll revisit the objection if it’s not clear,” and the prosecution moved on with its cross-examination without asking further questions of Mamie regarding her .family.
¶ 12. “The standard of review regarding admission of evidence is abuse of discretion.” Stubbs v. State, 811 So.2d 884, 386 (¶ 6) (Miss.Ct.App.2001). “Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely .affects a substantial right of a party.” Id, (internal citation and quotation marks omitted).
¶ 13. As stated, Mamie recalled that she played cards on the night of the robbery but, as the prosecution noted, she was unable to recall details surrounding other dates in her life. The testimony elicited from Mamie on cross-examination was used to prove just that — the fact that she lacked the ability to recall details relating to other dates and events, yet was able to vividly recall the facts on the night at issue. “Further, wide latitude is allowed in cross-examination, and its scope is not confined to matters about which a witness has testified ... on direct examination ” . Dedeaux v. State, 519 So.2d 886, 890 (Miss.1988). After reviewing the record, we find that allowing this line of questioning. did not adversely affect any of Berry’s substantial rights. Therefore, this issue is without merit.

3. .Cumulative Error

¶ 14. Finally, Berry argues that the circuit court committed numerous errors that cumulatively “severely handicapped” his fight to a fair trial. In addition to the two errors discussed above, Berry complains of the circuit court’s treatment of jurors and the "unclean” copy of jury instructions given to the jury. In Harding v. State, 17 So.3d 1129, 1133 (¶ 13) (Miss.Ct.App.2009) (internal citations and quotation marks omitted), this Court stated:
Under the cumulative-error doctrine, individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial. Under this reasoning, if there are no individual errors, there can be no cumulative error that warrants reversal.
¶15. During the trial, a juror approached the circuit judge and reported that improper communications had been made. The circuit judge excused that juror, and a brief discussion ensued among the attorneys and the circuit judge regarding how to proceed. Berry’s counsel objected to the circuit judge’s decision to speak with each remaining juror and ask if *89 they had been improperly contacted. Berry’s counsel argued that the jury could “make the leap” and assume that Berry committed foul play and improperly communicated with the jury. The court overruled the objection. We do not find that the record supports this argument, nor has Berry provided evidence or law to support his contention.
¶ 16. In addition, Berry objected to the individual jury instructions that were marked with the word “given” written on them and a designation of “S,” “C,” or “D,” indicating whether the particular instruction that was being given was submitted by the State'; the court, or the 'defense. The circuit judge also overruled this objection. Berry argues that the circuit court’s failure to give the jury a “clean copy” of the instructions prejudiced his case. Mississippi Code , Annotated section 99-17-35 (Rev.2015) states:
The judge in any criminal cause, shall-not sum. up or comment on the testimony, or charge the jury as to the weight of evidence; but at the request of either party he shall instruct the jury upon the principles, of law applicable to the case.. All instructions asked by either party must be in writing, and all alterations or modifications of instructions given by the court or refused shall be in writing, and those given may be taken out by the jury on its retirement. The clerk, before they are read or given to the jury, shall mark all instructions asked by either party, or given by the court, as being “given” or “refused,” as the case may be, and all instructions so marked shall be a part of the record, on appeal, without a bill of exceptions. •
¶17. We cannot find that the circuit judge erred in overruling the objection. In light of the fact that we have found no errors, there can be no cumulative error,
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF ARMED ROBBERY AND SENTENCE OF TWO CONCURRENT TERMS OF THIRTY YEARS, WITH TWELVE YEARS SUSPENDED AND EIGHTEEN YEARS TO SERVE FOR EACH COUNT, PLUS AN ADDITIONAL TERM OF FIVE YEARS UNDER THE GUN-ENHANCEMENT STATUTE, TO RUN CONSECUTIVELY TO THE ARMED-ROBBERY SENTENCES, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.

. Mississippi Code Annotated section 97-37-37 (Rev.2014),